JS 44C/SDNY
REV.
10/01/2020

**CIVIL COVER SHEET**

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for use of the Clerk of Court for the purpose of initiating the civil docket sheet.

| PLAINTIFFS | DEFENDANTS |
|---|---|
| MICHAEL REEVES (PRO SE) | THE CITY OF NEW YORK, CITY OF NEW YORK POLICE DEPARTMENT, JOHN DOE 1, JOHN DOE 2, JOHN DOE 3, JANE DOE 1, JANE DOE 2 |
| ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER) | ATTORNEYS (IF KNOWN) |
| Pro -se | |

CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE) (DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY)

CIVIL RIGHTS VIOLATION RESULTING IN IRREPARABLE HARM AND PERSONAL INJURY

Has this action, case, or proceeding, or one essentially the same been previously filed in SDNY at any time? No [ ] Yes [x]    Judge Previously Assigned

If yes, was this case Vol. [ ]   Invol. [ ]   Dismissed. No [ ]   Yes [ ]   If yes, give date _____ & Case No. _____

Is this an international arbitration case?    No [ ]    Yes [ ]

*(PLACE AN [x] IN ONE BOX ONLY)*    NATURE OF SUIT

**TORTS**

**ACTIONS UNDER STATUTES**

| CONTRACT | PERSONAL INJURY | PERSONAL INJURY | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| [ ] 110 INSURANCE | [ ] 310 AIRPLANE | [ ] 367 HEALTHCARE/ PHARMACEUTICAL PERSONAL INJURY/PRODUCT LIABILITY | [ ] 625 DRUG RELATED SEIZURE OF PROPERTY 21 USC 881 | [ ] 422 APPEAL 28 USC 158 | [x] 375 FALSE CLAIMS |
| [ ] 120 MARINE | [ ] 315 AIRPLANE PRODUCT LIABILITY | | | [ ] 423 WITHDRAWAL 28 USC 157 | [ ] 376 QUI TAM |
| [ ] 130 MILLER ACT | [ ] 320 ASSAULT, LIBEL & SLANDER | [ ] 365 PERSONAL INJURY PRODUCT LIABILITY | [ ] 690 OTHER | | [ ] 400 STATE REAPPORTIONMENT |
| [ ] 140 NEGOTIABLE INSTRUMENT | [ ] 330 FEDERAL EMPLOYERS' LIABILITY | [ ] 368 ASBESTOS PERSONAL INJURY PRODUCT LIABILITY | | **PROPERTY RIGHTS** | [ ] 410 ANTITRUST |
| [ ] 150 RECOVERY OF OVERPAYMENT & ENFORCEMENT OF JUDGMENT | [ ] 340 MARINE | **PERSONAL PROPERTY** | [ ] 820 COPYRIGHTS    [ ] 880 DEFEND TRADE SECRETS ACT | | [ ] 430 BANKS & BANKING |
| [ ] 151 MEDICARE ACT | [ ] 345 MARINE PRODUCT LIABILITY | [ ] 370 OTHER FRAUD | [ ] 830 PATENT | | [ ] 450 COMMERCE |
| [ ] 152 RECOVERY OF DEFAULTED STUDENT LOANS (EXCL VETERANS) | [ ] 350 MOTOR VEHICLE | [ ] 371 TRUTH IN LENDING | [ ] 835 PATENT-ABBREVIATED NEW DRUG APPLICATION | | [ ] 460 DEPORTATION |
| | [ ] 355 MOTOR VEHICLE PRODUCT LIABILITY | | [ ] 840 TRADEMARK | | [ ] 470 RACKETEER INFLU- ENCED & CORRUPT ORGANIZATION ACT (RICO) |
| [ ] 153 RECOVERY OF OVERPAYMENT OF VETERAN'S BENEFITS | [x] 360 OTHER PERSONAL INJURY | [ ] 380 OTHER PERSONAL PROPERTY DAMAGE | **LABOR** | **SOCIAL SECURITY** | [ ] 480 CONSUMER CREDIT |
| [ ] 160 STOCKHOLDERS SUITS | [ ] 362 PERSONAL INJURY - MED MALPRACTICE | [ ] 385 PROPERTY DAMAGE PRODUCT LIABILITY | [ ] 710 FAIR LABOR STANDARDS ACT | [ ] 861 HIA (1395ff) | [ ] 485 TELEPHONE CONSUMER PROTECTION ACT |
| [ ] 190 OTHER CONTRACT | | | [ ] 720 LABOR/MGMT RELATIONS | [ ] 862 BLACK LUNG (923) | |
| [ ] 195 CONTRACT PRODUCT LIABILITY | | **PRISONER PETITIONS** | [ ] 740 RAILWAY LABOR ACT | [ ] 863 DIWC/DIWW (405(g)) | [ ] 490 CABLE/SATELLITE TV |
| [ ] 196 FRANCHISE | **ACTIONS UNDER STATUTES** | [ ] 463 ALIEN DETAINEE | [ ] 751 FAMILY MEDICAL LEAVE ACT (FMLA) | [ ] 864 SSID TITLE XVI | [ ] 850 SECURITIES/ COMMODITIES/ EXCHANGE |
| | **CIVIL RIGHTS** | [ ] 510 MOTIONS TO VACATE SENTENCE 28 USC 2255 | | [ ] 865 RSI (405(g)) | |
| | [x] 440 OTHER CIVIL RIGHTS (Non-Prisoner) | [ ] 530 HABEAS CORPUS | [ ] 790 OTHER LABOR LITIGATION | **FEDERAL TAX SUITS** | [ ] 890 OTHER STATUTORY ACTIONS |
| **REAL PROPERTY** | [ ] 441 VOTING | [ ] 535 DEATH PENALTY | [ ] 791 EMPL RET INC SECURITY ACT (ERISA) | [ ] 870 TAXES (U.S. Plaintiff or Defendant) | [ ] 891 AGRICULTURAL ACTS |
| [ ] 210 LAND CONDEMNATION | [ ] 442 EMPLOYMENT | [ ] 540 MANDAMUS & OTHER | | [ ] 871 IRS-THIRD PARTY 26 USC 7609 | [ ] 893 ENVIRONMENTAL MATTERS |
| [ ] 220 FORECLOSURE | [ ] 443 HOUSING/ ACCOMMODATIONS | | **IMMIGRATION** | | [ ] 895 FREEDOM OF INFORMATION ACT |
| [ ] 230 RENT LEASE & EJECTMENT | [ ] 445 AMERICANS WITH DISABILITIES - EMPLOYMENT | **PRISONER CIVIL RIGHTS** | [ ] 462 NATURALIZATION APPLICATION | | [ ] 896 ARBITRATION |
| [ ] 240 TORTS TO LAND | [ ] 446 AMERICANS WITH DISABILITIES -OTHER | [ ] 550 CIVIL RIGHTS | [ ] 465 OTHER IMMIGRATION ACTIONS | | [ ] 899 ADMINISTRATIVE PROCEDURE ACT/REVIEW OR APPEAL OF AGENCY DECISION |
| [ ] 245 TORT PRODUCT LIABILITY | [ ] 448 EDUCATION | [ ] 555 PRISON CONDITION | | | [ ] 950 CONSTITUTIONALITY OF STATE STATUTES |
| [ ] 290 ALL OTHER REAL PROPERTY | | [ ] 560 CIVIL DETAINEE CONDITIONS OF CONFINEMENT | | | |

*Check if demanded in complaint:*

[ ] CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DO YOU CLAIM THIS CASE IS RELATED TO A CIVIL CASE NOW PENDING IN S.D.N.Y. AS DEFINED BY LOCAL RULE FOR DIVISION OF BUSINESS 13?

IF SO, STATE:

DEMAND $ _____  OTHER _____   JUDGE _____   DOCKET NUMBER _____

*Check YES only if demanded in complaint*

JURY DEMAND: [x] YES [ ] NO

NOTE: You must also submit at the time of filing the Statement of Relatedness form (Form IH-32).

*(PLACE AN  x  IN ONE BOX ONLY)*                    **ORIGIN**

[x] 1 Original         [ ] 2 Removed from      [ ] 3 Remanded      [ ] 4 Reinstated or      [ ] 5 Transferred from     [ ] 6 Multidistrict          [ ] 7 Appeal to District
      Proceeding              State Court                from                      Reopened                     (Specify District)           Litigation                        Judge from
                                                              Appellate                                                                                   (Transferred)                Magistrate Judge
                        [ ] a. all parties represented        Court

                        [ ] b. At least one party                                                                           [ ] 8 Multidistrict Litigation (Direct File)
                                is pro se.

*(PLACE AN  x  IN ONE BOX ONLY)*             **BASIS OF JURISDICTION**                      ***IF DIVERSITY, INDICATE***
                                                                                                              ***CITIZENSHIP BELOW.***
[x] 1 U.S. PLAINTIFF    [ ] 2 U.S. DEFENDANT    [ ] 3 FEDERAL QUESTION    [ ] 4 DIVERSITY
                                                        (U.S. NOT A PARTY)

**CITIZENSHIP OF PRINCIPAL PARTIES (FOR DIVERSITY CASES ONLY)**

(Place an [X] in one box for Plaintiff and one box for Defendant)

|  | PTF | DEF |  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|---|---|---|
| CITIZEN OF THIS STATE | [x] 1 | [ ] 1 | CITIZEN OR SUBJECT OF A FOREIGN COUNTRY | [ ] 3 | [ ] 3 | INCORPORATED and PRINCIPAL PLACE OF BUSINESS IN ANOTHER STATE | [ ] 5 | [ ] 5 |
| CITIZEN OF ANOTHER STATE | [ ] 2 | [ ] 2 | INCORPORATED or PRINCIPAL PLACE OF BUSINESS IN THIS STATE | [x] 4 | [ ] 4 | FOREIGN NATION | [ ] 6 | [ ] 6 |

PLAINTIFF(S) ADDRESS(ES) AND COUNTY(IES)

MICHAEL REEVES
217 BOERUM STREET, 3B
BROOKLYN NY 11206

DEFENDANT(S) ADDRESS(ES) AND COUNTY(IES)

THE CITY OF NEW YORK,
 NYC LAW DEPARTMENT
100 CHURCH STREET, NY NY 10007                    **JOHN/JANE  DOES
                                                            653 GRAND AVE
                                                            BROOKLYN NY 11238

DEFENDANT(S) ADDRESS UNKNOWN
REPRESENTATION IS HEREBY MADE THAT, AT THIS TIME, I HAVE BEEN UNABLE, WITH REASONABLE DILIGENCE, TO ASCERTAIN
THE RESIDENCE ADDRESSES OF THE FOLLOWING DEFENDANTS:

**COURTHOUSE ASSIGNMENT**

I hereby certify that this case should be assigned to the courthouse indicated below pursuant to Local Rule for Division of Business 18, 20 or 21.

Check one:    THIS ACTION SHOULD BE ASSIGNED TO:    [ ] WHITE PLAINS    [x] MANHATTAN

DATE                                                        ADMITTED TO PRACTICE IN THIS DISTRICT
                    SIGNATURE OF ATTORNEY OF RECORD        [ ] NO
                                                            [ ] YES (DATE ADMITTED Mo. _____ Yr. _____)
RECEIPT #                                                 Attorney Bar Code #

Magistrate Judge is to be designated by the Clerk of the Court.

Magistrate Judge _____ is so Designated.

Ruby J. Krajick, Clerk of Court by _____ Deputy Clerk, DATED _____.

UNITED STATES DISTRICT COURT (NEW YORK SOUTHERN)

## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

_____

MICHAEL REEVES                                      )
                                                    )
                                                    )
                                                    )
                        Plaintiff,                  )
                                                    )
                                                    )
              -v-                                   )
                                                    )
THE CITY OF NEW YORK                                )
                                                    )
THE CITY OF NEW YORK                                )       Civil Action No.
POLICE                                              )
DEPARTMENT                                          )
                                                    )
DETECTIVE JOHN DOE 1                                )
c/o NYPD SPECIAL VICTIMS                            )
SQUAD                                               )
653 Grand Ave                                       )
Brooklyn NY 11238                                   )
                                                    )
DETECTIVE JOHN DOE 2                                )
c/o NYPD SPECIAL VICTIMS                            )
SQUAD                                               )
653 Grand Ave                                       )
Brooklyn NY 11238                                   )
                                                    )
DETECTIVE JOHN DOE 3                                )
c/o NYPD SPECIAL VICTIMS                            )
SQUAD                                               )
653 Grand Ave                                       )
Brooklyn NY 11238                                   )
                                                    )
DETECTIVE JANE DOE 1                                )
AKA DETECTIVE DAVILLA                               )
c/o NYPD SPECIAL VICTIMS                            )
SQUAD                                               )
653 Grand Ave                                       )
Brooklyn NY 11238                                   )
                                                    )
DETECTIVE JANE DOE 2                                )
c/o NYPD SPECIAL VICTIMS                            )
SQUAD                                               )
653 Grand Ave                                       )
Brooklyn NY 11238                                   )
                                                    )
                        Defendants.                 )
_____            )

# COMPLAINT

This is a civil rights action seeking redress for the deprivation of fundamental rights guaranteed, inter alia, by the United States Constitution and the New York City Human Rights Act (NYCHRL). Plaintiff Michel Reeves, a Black man who had committed no wrong, was subjected to false arrest, excessive force, malicious prosecution, false imprisonment, human rights violation under the New York City Human Rights Law *NYCHRLL), seizure of his cell phone and freedom, frisk in public and was forced to undergo a visual pat down search of his genitals and anal area in public by the defendants.  Without any warning, he was hauled to holding cell in the Brooklyn NYPD Special victim's Squad interrogation cell. . There he was searched again. He was moved to the NYPD Central Booking. There, he was again search multiple times, he was then placed into a small holding cell to wait to see a judge. The judge was to make a determination if REEVES was going to go back home or to Rikers Island. All without sufficient just cause or reasonable suspicion.

Without any warrant for arrest, using an eye card, the detectives claimed to have an eye card that bestowed upon them the exact same right as a warrant. This is an elite unit of the police department. These agents knew or should have known, the damaging effect of getting arrested for a sex crime. Particularly, the cascading consequences on the life of an innocent person. A person may be disqualified for certain jobs, like law enforcement, military, etc. Harder to get into college. May be disqualified from scholarships. Harder to find a job. Harder to find housing, including public housing and more. Felony arrest information is passed to the FDLE, which sells it, and the FBI.

The FBI does not seal or expunge any records. Records may still be available for criminal justice agencies or the New York Bar (license attorneys), in criminal prosecutions, or if you seek to work with an agency serving children, the disabled, or the elderly, or seeks employment at a seaport.

It is a basic right of persons in the United States to live freely without being seized by armed Agents of the state without just cause, a right denied to Mr. Reeves because he is Black and the agents give no value to tainting his criminal record with an unjust arrest for a sex offense. The agency has a culture and a lackluster attitude when it comes to arresting black men that cares less about the cascading consequences of the arrest on a black man.

This terrifying, intrusive, substantial, and unwarranted invasion of privacy was a repulsive act by the City of New York Police Department was of profound humiliation and dehumanization. It was carried out by defendants as a signal and means of subjugation and degradation without any lawful purpose whatsoever. Mr. Reeves was not a fugitive. He was not a wanted man. He had not had a criminal conviction in 34 years.

Mr. Reeves no violence in his past history. The defendants are familiar with him and his history. The defendants are aware that he is a business owner because they had recently towed one of his vehicles. They know that he is acclimated in his community. That he is not a thug. No weapons involved. To make matters worse, the defendants claimed that the alleged complaint was made way back in December 2023. Yet, they did nothing and then suddenly decided to act on March 12, 2024, in the wee hours of the morning.

Mr. Reeves has had 5 contacts with the defendants leading up to the arrest. During one, he was given a traffic ticket for one of his headlights being out, just a few feet away from his home. Mr. Reeves showed the officers the documents that he had just purchased the car days earlier. The vehicle even had a valid dealer plate attached. They could have arrested him then.

On February 20, 24, three NYPD Officers visited the home of the defendant because of a report that he had made. Officers could have arrested him. NYPD knew or should have known that the plaintiff was not a high risk person who deserved a 06:00am arrest. These choose to ignore all of the positive factors because he is a black man.

On March 3, 2024, plaintiff had another encounter in regards to a 911 call he made when he thought that his car being broken into. They could effectuated this arrest once again. They did not. They have both of his cell phone numbers. They could have invited him over to the station in the same fashion that they called both of his phones on the morning of this sad event. None of that happened. Instead, months after the report was allegedly made, and several encounters later, these men suddenly believed that it was now time to attack Mr. Reeves during his early morning sleep, while still in bed, humiliate and arrest him, and destroy his life and career with a new arrest record , was the most viable option.

Weeks prior to this event, 3 unknown NYPD Detectives descended upon Mr. Reeves' vehicle that was parked next to his condo. When Reeves confronted the officers, he was told that they had a

complaint the car was improperly parked. Out of nowhere, and abruptly, this Detective got very aggressive and threatened to take him to jail. The officer told Mr. Reeves that the next time his car is not correctly parked, it was going to be towed. He went on to say to REEVES:

" I am watching you, if you flipping odometers, I will get you".  Mr. Reeves is in the car business. Mr. Reeves had prevailed against this particular officer months earlier for towing his vehicle unfairly. Mr. Reeves admits that he does not have any evidence to support a claim that the events are related. However, he feels that it is important to make this court aware of those events so that the court can make a fair decision regarding the infirmities of the arrest and subsequent constitutional abuse that followed the unlawful arrest.

There are few events in life that are as traumatic as being arrested for a crime. More so, for a crime that never happened. In a split moment, you go from being a free person to a prisoner in handcuffs and chains, taken away from your home, family, and friends and locked up in a jail. Arrest can have adverse consequences— with or without a conviction—that perpetuate criminal activity.

Even a lay person knows the consequences of an arrest. Police are trained professions who know this because they are in an important position of authority to make this determination. They have a responsibility to consider its damaging consequences. They must have very strong and credible evidence to be able to make an arrest. Better yet, threat to break into a black man's home who has done nothing wrong at all. In People v. DeBour, the New York Court of Appeals determined that when interacting with a civilian, there are limits on the officer's authority depending on the circumstances of the encounter.

There are four levels of police encounters. In a Level 1 encounter, an officer may approach someone and ask general, non-accusatory questions. In a Level 2 encounter, the officer may ask accusatory questions. In a Level 3 encounter, the officer may stop someone and make it clear that they are not free to leave; the officer might also, depending on the circumstances, have the legal authority to frisk or search them. A Level 4 encounter is an arrest or summons. A level 4 is the gravest of the encounters. It must be conducted with prudence. Evidence must be able to support the basis of the arrest. Here, that is far from what happened.

Detective John Doe 1 was assisted by a fellow detective, John Doe 2 and John Doe 3, who condoned, ratified and supported this manifestly illegal conduct and failed and refused to intervene to stop Detective John Doe 1, unconstitutional and outrageous conduct.

After seizing Mr. Reeves from his home and depriving him of his liberty, Detective John Doe 1 subjected Mr. Reeves to two illegal frisks and searches, which uncovered no contraband, and thereafter forced Mr. Reeves into a black van and he was taken to the Special Victims Unit Headquarters. There, his 2 cellphones were seized. His shoes lace, belt and his coat were taken away. He was frisks again. He was slammed into a holding cell for interrogation. Mr. Reeves was in tears and begging them with repeated notifications that he has done nothing wrong. A detective Davilla informed was in charge of the investigation. She later told MR. Reeves that she was charging him with ATTEMPTED RAPE. For breakfast, he was given a small cup of water. Mr. Reeves is a diabetic male. He has been diagnosed with chronic PTSD. It was quickly becoming a very traumatic experience for him.

Under threat of being sent to jail, and determined to proof his total innocence, Reeves signed an unconstitutional consent for agents to search his cell phone. This phone search was unconstitutional because it is not supported by probable cause. While law enforcement agents have long been permitted to search the person of a defendant incident to a lawful arrest for whatever evidence they may find of his offense, a warrant is required to search a cell phone, "even when a cell phone is seized incident to arrest." See Riley v. California, 134 S. Ct. 2473, 2482, 2493 (2014).

The Supreme Court has reasoned that, because of the vast array of data that individuals can and do store on their cell phones, "a cell phone search would typically expose to the government far more than the most exhaustive search of a house. A phone not only contains in digital form many sensitive records previously found in the home; it also contains a broad array of private information never found in a home in any form." Id. at 2491. "The sum of an individual's private life can be reconstructed through a thousand photographs labeled with dates, locations, and descriptions [.]" Id. at 2489. The Court extended this logic to both "smart phones" and "flip phones." Id. at 2480–81.

The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend.  The Fourth Amendment was adopted largely to "prevent . . . 'general, exploratory rummaging in a person's belongings' and the attendant privacy violations." United States v. Galpin, 720 F.3d 436, 445 (2d Cir. 2013) (quoting Coolidge v. New Hampshire, 403 U.S. 443, 467 (1971)).

"[A] warrant may not be issued unless probable cause is properly established and the scope of the authorized search is set out with particularity." Kentucky v. King, 563 U.S. 452, 459 (2011). In addition to ensuring that there is probable cause to seize and search a cell phone, courts must also give special attention to whether a warrant to search a cell phone is impermissibly overbroad. A search warrant is overbroad in violation of the Fourth Amendment if its "description of the objects to be seized is . . . broader than can be justified by the probable cause upon which the warrant is based." Galpin, 720 F.3d at 446. A warrant that purports to "authorize the seizure of, essentially, all documents" exceeds the scope of probable cause. United States v. Wey, 256 F. Supp. 3d 355, 393 (S.D.N.Y. 2017).

"The particularity requirement has three components. First, a warrant must identify the specific offense for which the police have established probable cause. Second, a warrant must describe the place to be searched. Third, the warrant must specify the items to be seized by their relation to designated crimes." Galpin, 720 F.3d at 445-46 (internal citations omitted). The particularity requirement "'makes general searches . . . impossible and prevents the seizure of one thing under a warrant describing another. As to what is to be taken, nothing is left to the discretion of the officer executing the warrant.'" Id. at 446 (quoting Marron v. United States, 275 U.S. 192, 196 (1927)). The government's search of Mr. Reeves' cell phones violated the Fourth Amendment. First, the government lacked probable cause to search Mr. Reeves' phones; at a minimum, the search warrant that it obtained is overbroad because it covers far more data than could possibly be justified.

Here, particularly, where even after the case was dismissed and NYPD refused to return the cell, the violation goes beyond belief. Mr. Reeves was arrested upon probable cause to believe that he attempted to commit RAPE. His cell phones cannot be searched incident to a lawful arrest; separate probable cause to search is required. Riley v. California, 134 S Ct. 2473, 2493 (2014). "[A] determination of probable cause to search is not the same as a determination that there is, at the same time, probable cause to arrest, or vice versa." United States v. Pabon, 871 F.3d 164, 181 (2d Cir. 2017); United States v. Burton, 288 F.3d 91, 103 (3d Cir. 2002) ("[P]robable cause to arrest does not  automatically provide probable cause to search the arrestee's home."); United States v. Santarsiero, 566 F. Supp. 536, 538 (S.D.N.Y. 1983) ("Probable cause to arrest an individual does not, in and of itself, provide probable cause to search that person's home or car.").

Probable cause to search a person cell phone must be based on "a sufficient nexus between the criminal activities alleged" and the location or items searched. United States v. Singh, 390 F.3d 168, 182 (2d Cir. 2004). In particular, searches must be supported by probable cause showing that there is a "fair probability that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238 (1983).

The search of Mr. Reeves' phone fell below an objective standard of reality. The search and seizure of Mr. Reeves cell phone was further conducted in violation of his civil rights. Particularly, with lacking evidence and where Mr. Reeves repeatedly told the detective that this alleged victim, someone named Stefanie, was nothing but a disgruntled employee/house cleaning lady that Mr. Reeves had terminated because that individual was more interested in doing narcotics than cleaning Mr. Reeves home. He went on to report her to Elite Homecare Agency. The exact same agency that sent her to Mr. Reeves' residence.

He demanded that the agency not send this lady back to his home and demanded she be replaced with a new house cleaner. The agents did not believe him. He went on to show two phone calls made to the agency on the day that the alleged attempted assault happened.

Nothing worked. The detectives already had their minds made up. They simply just told him that he was going to jail and the judge will likely release him and give him a new court date. He was placed back into handcuffs and driven to NYPD Central Booking. There, he given a few more cups of water for lunch and dinner. NYPD Officers subjected Mr. Reeves to another frisk searching around the waistline area of his underwear, frisking around his genitals and buttocks to public view and subjected him to a visual search under depilatory conditions waiting to see a judge. . Mr. Reeves was then held hostage in a small holding cell with countless others.

There he laid on a steel bench for hours waiting to see a judge that was going to determine if he was going home on his own recognizance or was going to be released on bond. He begged to call his family. He begged to make a legal call. He begged to be heard. He even begged the in-charge officer on the evening shift to be allowed to see the judge and not have to spend the night in jail innocently. Because he was there on an attempted rape charge, it was obvious to him that people had a distaste towards him. All of this suffering because he is a black man. When he directly begged the evening shift officer for food, the officer said that the

only food he had at the holding cell was hummus.

When Mr. Reeves complained of this abuse, sought the identity of Officers, and stated an intention to file a complaint, Officers threatened and retaliated against Reeves by threatening to detain him further without cause and delay his paperwork to keep them from timely seeing the judge. Those who not see the judge by 12:30 am must spend the night in jail sitting next day's court begins at 09:00am.

Mr. Reeves has undoubted, God given preeminent right and constitutional protections against the infringement of personal or enjoyment of any right, privilege, power or immunity. He also has a right to be freed from discrimination, illegal searches and seizures, false arrest and malicious prosecutions. Police officers, are not a remedy for an officer's use of the power vested in him by the state, including being armed, to engage in illegal racial profiling, illegal arrest and to strip another human being of their freedom in public, inspect his genital and anal areas, terrify him, and subject him to humiliation, degradation and forced submission, all without just cause. No officer who engages in racial profiling and dehumanization, who holds persons in such disregard and has exercised such an abuse of state authority, should be out on the streets carrying a weapon.

Mr. Reeves was released about 01:00AM the following morning March 13, 2024. He was informed that the District Attorney decided not to prosecute due to inconsistencies in the victim's statement. He was sent into the freezing hours of the morning without any of his property, not even his coat. He walked 40 minutes in the freezing cold from Central Booking to New York City Police Department - 77th Precinct, 127 Utica Ave, Brooklyn, to get his property.

Upon arrival at the precinct, it was discovered that the detectives mistakenly did not put Mr. Reeves coat in his property. Luckily, he was able to retrieve his belt, shoes lace, bible, and one of two cell phones confiscated.  The following day, Mr. Reeves contacted Detective Davilla (Jane Doe 1) to retrieve his coat and his cellphone. Detective Davilla told Mr. Reeves that the department was seizing his phone. He has not retrieve his phone or coat at time of this filing. Mr. Reeves phone and coat were never returned.  All of this suffering was unwarranted and wholly unnecessary and could have been easily prevented if Mr. Reeves was not a black man.

## NATURE OF ACTION

1.        This is an action arising under the United States Constitution and 42 U.S.C. § 1983

("1983"), False Arrest, Malicious Prosecution, excessive use of force, NYCHRL and Monell Claim.

2.        Detective John Doe 1 intentionally and maliciously seized Plaintiff without just cause or at the

least without adequate probable cause, searched him in public without just cause, and search his genital and

anal areas without just cause. Officer John Doe 2 and John Doe 3 observed and assisted in this unlawful and

malicious conduct without interceding.

3.        Detective John Doe 1, 2, and 3, Jane Doe 1 and Jane Doe 2, now thereafter referred to as ( The

Does),  intentionally and maliciously ignored known consequences of being charged for a serious sex crime by

failing to conduct a proper detailed investigation required before effecting an arrest.

4.        The Does), intentionally and maliciously showed a deliberate indifference to the known

cascading consequences of being arrested for a serious a sex crime and deliberately ignored the consequences

and destructive impact of the arrest because Mr. Reeves is a black man.

5.        The defendants were negligent for failing to stop the known cascading consequences of this

arrest due to a careless disregard about the outcome of their arrest.

6.        The defendants intentionally and maliciously, and with neither probable cause nor reasonable

suspicion, issued to Plaintiff an illegal form to sign. Thus, was all conducted to validate the illegal search of

his cell phone that happened prior to even signing the paper.  This was done to intimidate Plaintiff so that he

would not exercise, or to punish him for exercising, his rights to freedom of speech and freedom to petition the

government for redress of grievances, and also in a perpetual attempt to justify their improper conduct post

facto.

7.        The defendants' negligent action will have a disproportionate adverse impact on the professional

career of the plaintiff. It will affect his ability to be able to make a meaningful living. Here, Mr. Reeves'

profession requires him to be licensed and bonded yearly. Each year when the bond application is renewed, the

bonding company make inquiries into whether or not there had been any convictions or arrest within the prior

year.

8.    It is fundamentally unfair to Mr. Reeves that he now has to explain why he was arrested for such a serious crime that never ever happened. If he was not black, this would not have happened to him. He now has to leave his future employment up to the discretion of the employers each and every year from now on.

9.   The FBI does not delete arrest records.

### JURISDICTION AND VENUE

10.  This Court has jurisdiction to hear this Complaint pursuant to 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1343(a)(3) and (4) (civil rights jurisdiction), and 28 U.S.C. § 1367 (supplemental jurisdiction).

11.    Venue is proper in the United States District Court for the Southern District of New York under 28 U.S.C. § 1391(b)(2) because a substantial part of the acts or omissions giving rise to the claims herein occurred in this judicial district.

### PARTIES

12.    Plaintiff Michael Reeves ("REEVES") resides at 217 Boerum St, Brooklyn, New York 11206.

13.    Defendant The City of New York is the City of New York.

14.    Defendant Detective John Doe 1, whom Plaintiff sues in his individual and official capacities, is and was at all times relevant to this proceeding an officer of the City of New York Police Department (NYPD). Detective Doe 1 at all times relevant herein under color of New York Law and in his capacities as arresting agent and employee of NYPD and the CITY OF NEW YORK.

15.    Defendant Detective John Doe 2, whom Plaintiff sues in his individual and official capacities, is and was at all times relevant to this proceeding an officer of the City of New York Police Department (NYPD). Detective Doe 2 at all times relevant herein under color of New York Law and in his capacities as arresting agent and employee of NYPD and the CITY OF NEW YORK.

16.     Defendant Detective John Doe 3, whom Plaintiff sues in his individual and official capacities, is and was at all times relevant to this proceeding an officer of the City of New York Police Department (NYPD). Detective Doe 3 at all times relevant herein under color of New York Law and in his capacities as arresting agent and employee of NYPD and the CITY OF NEW YORK.

17.     Defendant Detective Jane Doe 1 (aka Detective Davilla), whom Plaintiff sues in her individual and official capacities, is and was at all times relevant to this proceeding an officer of the City of New York Police Department (NYPD). Detective Jane Doe 1 at all times relevant herein under color of New York Law and in her capacities as agent in charge of the investigation, charged MR. Reeves with attempted RAPE and is an employee of NYPD and the CITY OF NEW YORK.

18.     Defendant Detective Jane Doe 2, whom Plaintiff sues in her individual and official capacities, is and was at all times relevant to this proceeding an officer of the City of New York Police Department (NYPD). Detective Jane Doe 2 at all times relevant herein under color of New York Law and in her capacities as agent, driver of vehicle that transported the plaintiff to Central Booking, and is an employee of NYPD and the CITY OF NEW YORK.

**FACTS**

19.     MICHAEL REEVES immigrated to the United States in April 1986. Due to conviction(s) as a teenager, it took him 34 years to gin legal status. Even though he was incarcerated, he was released early for good behavior way back in the 90's. Reeves has not had any conviction, not even traffic, since 1990.  In August 2014, Immigration Judge Gabriel Videla granted Reeves immigration bond citing that he was not a danger, making him one of the first immigrants in the country in his situation to ever be granted a bond. In 2019, 9, Immigration Judge Mimi Tsankov granted Reeve, Again his criminal record played a significant role. HE became one of a handful of people in the entire country in his situation to gain legal status during the Trump administration. All of his hard work to keep his record clean for 36 years were thrown down the drains because he is a black man.

20.     REEVES is a Black man who, on March 12, 2024, was at his residence and asleep. in his bed at 6:00am when his civil rights were violated and  he was seized from his home without any prior warning or notice leading up to the event.

21.     Detective John Doe 1 was the lead detective supervising the arrest.

22.     Detective John Doe 2 drove the arresting van to 653 Grand Ave, Brooklyn New York.

23.     Detective John Doe 3 provided overall support.

24.     At no time during the events at issue was there probable cause or reasonable suspicion to believe that REEVES was a danger or threat that needed to be humiliated and searched and patted down and handcuffed in pubic with the general public watching.

25.     At no time during the events at issue was there sufficient probable cause or sufficient reasonable suspicion to believe that REEVES had committed any crime other than the fact that he was a black man.

26.     At no time during the events at issue was there sufficient evidence to support such an arrest.

27.     On March 12, 2024, Reeves was ambushed under the disguise of an arrest for something that never happened.

28.     During this illegal arrest, defendants began by violently kicking and banging on the front door of Mr. Reeves residence at or about 6 am. Officers shouted out his name to a level that perhaps all of the residents in the building witnessed the humiliating arrest. Officers threatened to break into the apartment if Reeves did not come outside. When Reeves exited, he was violently placed into handcuffs. Hands behind his back despite his pleas of pains and repeated notifications of previous injuries and request to be handcuffed in front.

29.     The agents' use of force was wholly unnecessary and disproportionate as Mr. Reeves did not resist in any way when they arrested him. Despite there was insufficient probable cause to support a violent arrest, the officers slammed him into the wall, the men handcuffed him, and placed him under arrest. NYPD Officers knew or should have known that their evidence did not support a violent arrest. He was driven to the police station as neighbors and other onlookers stared in total shock.

30.     REEVES spent hours in custody at the precinct located at 653 Grand Ave, Brooklyn NY. He was then moved to NYPD Central Booking located at 120 Schemerhorn Street, Brooklyn. Claimant was released from Central Booking at or about 1am the following day. Reeves was not fed breakfast, lunch or

dinner as a diabetic male. At released, REEVES was informed that the District Attorney decided not to prosecute because of inconsistencies (lies) in the alleged victim statement(s).

31.    Reeves contends that his arrest was conducted in violation of his civil rights.

32.    The actions were malicious and damaging.

33.    A dismissal really does very little to remedy the harm that comes from being arrested for a serious sex crime. It is an unfair trade off for a 100% innocent person. In many schools of public opinion, a not guilty verdict outweighs a dismissal. The reason is that a criminal case can be dismissed for a litany of reasons. A dismissal does not totally vindicate the person that arrested in the minds of the public, when it comes to ex crimes.  REEVES has been unfairly left with a scar. He has been pushed into the losing end of the success. Claimant exemplary criminal record of over 34 years of abiding the law, is now unfairly tarnished with an unfair arrest record for a sex crime that never ever occurred.

34.  REEVES was humiliated in public by the loud screaming at is front door, the kicking on the door, turning the door knob violent and shaking the door, handcuffing and arresting him at his home. Detective John Doe 2 and Detective John 3 had the opportunity to intervene and chose not to intervene but instead to assist.

35.    REEVES has already suffered financial losses.

36.    REEVES will continue to experience significant financial losses.

37.    ATTEMPTED RAPE is a very serious charge for anyone to be arrested for.

38.    DOE 2 and Doe 3 New York State Laws. DOE 2 and DOE 3 had opportunities to intervene and prevent REEVES' rights from being violated, but instead facilitated and supported the violations.

39.    REEVES professional and business opportunities is impacted by this new arrest record.

40.    There was no need for this arrest if the defendants would have simply just did their job.

41.    There was no need for an early morning intrusion except that REEVES is black man.

42.    Humiliating black men is the norm.

43.    Destroying the future of black men by tainting their criminal records with litanies of arrest and convictions is destructive and malicious has long been a longstanding concern of the New York City Council because that could be weaponized and used as an effective weapon which can prevent many black men from realizing their dreams.

44.    REEVES believes that if this court was to closely examine the rules and guidelines governing how arrest are being perpetrated in this great city of New York, it will find striking similarity between what REEVES experienced comparable to many people  similarly situated..

**CLAIMS FOR RELIEF**

**COUNT I**

**Violation of the Fourth and Fourteenth Amendments – 42 U.S.C. § 1983**

**Violation of New York City Human Rights Law (NYCHRL).**

**False Arrest. Excessive Force. Malicious Prosecution.**

**Negligent infliction of Emotional Distress**

**-    ( ALL OF THE DEFENDANTS)**

45.    The preceding paragraphs 1 through 44 are incorporated herein by reference.

46.    The arrest was, at its inception, baseless.

47.    The defendants had no objectively reasonable basis to believe that REEVES had committed a serious sexual offense because their evidence did not support that reasoning.

48.    REEVES was arrested because he is a black man.

49.    REEVES arrest was wrongful and constituted a seizure.

50.    At all times relevant hereto, REEVES had a right clearly established under the Fourth Amendment to the United States Constitution and enforceable against the States through the Due Process Clause of the Fourteenth Amendment to be free from unreasonable searches and seizures.

51.    The seizure of REEVES from his bed violated these rights.

52.    Without conducting proper investigation with due diligence, instead opting to abruptly arrest REEVES for attempted RAPE was conducted in violation of his REEVES' civil rights.

53.    On March 12, 2024, the defendants had no articulable facts to support a reasonable suspicion that REEVES had engaged, was in the process of engaging, or was about to engage in a violation of the law.

54.    The defendants' arrest of REEVEs from his home was an unreasonable seizure.

55.  Defendants acted with sufficient malice for punitive damages to issue under New York State Laws

56.    Defendants acted with actual malice in the decision to arrest Reeves from his home during the early morning hours, the arrest was motivated by an improper motive, i.e., retaliation, and racial profiling or race based discrimination.

57.    Coextensively, in addition and/or in the alternative, ACOL acted with sufficient state of mind for punitive damages to issue under 42 U.S.C. § 1983. ACOL acted with evil motive or intent or reckless or callous indifference to REEVES's federally protected rights.

58. Agents, who ambushed and seized REEVES from his home, while acting under color of New York State Law, violated REEVES' rights under the Fourth Amendment to the U.S. Constitution and is liable to REEVES under 42 U.S.C. § 1983, and violated New York human Rights Law (NYCHRL) and is denied governmental immunity and is, additionally, liable to REEVES under New York Laws.

59.    REEVES suffered damages, including economic and non-economic injuries as a consequence of these violations.

60.    Reeves suffered a physical injury.

61.    REEVES suffers from and is being treated for chronic PTSD.

62.    REEVES believes that his PTSD has worsened because he is now afraid to even answer his door and his heart rapidly beats each time someone knocks on his front door.

63.    REEVES is presently experiencing extreme depression and phobia. He has set up an appointment to see a physiatrist.

64.    REEVES now lives in fear and for no good reason at all.

## COUNT II

### Monell Claim

### -          ( CITY OF NEW YORK)

65.     The City of New York, as a matter of law, is liable under Monell for the alleged policy inactions of the NYPD.

66.     The constitutional violations underlying his Monell is applicable to this instant complaint.

67.     In Bellamy's, it was held that the City of New York may be held liable for the consequences of the alleged policies of the QCDA's office under the Monell doctrine. " Bellamy v. City of N.Y., 914 F.3d 727, 734 (2d Cir. 2019).

68.     The City of New York is responsible for the unlawful arrest against REEVES on March 12, 2024 that was conducted by its own police department.

69.     The City of New York is responsible for the damages that REEVES has suffred,

### COUNT III

### Violation of the Fourth and Fourteenth Amendments – 42 U.S.C. § 1983

### Illegal search and seizure of REEVES Cellphone

### -  ( DETECTIVE DAVILLA ( Detective Jane Doe 1)

70.     The preceding paragraphs 1 through 44 are incorporated herein by reference.

71.     Defendant Detective Davilla acted with sufficient malice for punitive damages to issue under New York State Laws by the unlawful confiscation, search without permission and seizure of REEVES cellphone.

72.     After Davilla had searched through REEVES for hours, at times, in plain view, she then gave REEVES a form to sign that was to bestowed upon her REEVES permission allowing to legally search the phone.

73.     The phone search was illegal.

74.     The phone seizure was unlawful.

75.     The refusal to return the phone after the case was dismissed is a blatant disregard for following the rules and an abuse of power.

76.     In Riley v. California, 573 U.S. 373 (2014), the Supreme Court ruled that the warrantless search and seizure of the digital contents of a cell phone during an arrest is unconstitutional under the Fourth Amendment. NYPD OFFICERS failed to conduct a meaningful investigation info facts and circumstances before making an unlawful arrest.

77.     "[A] warrant to search a cell phone may not be issued unless probable cause is properly established and the scope of the authorized search is set out with particularity. Because Davilla lacked sufficient probable cause, shoe took the laws into her own hands by searching the phone without permission.

**COUNT IV**

**Invasion of Privacy**

**Intrusion on Seclusion**

**-  DAVILLA**

78.     The preceding paragraphs 1 through 44 are incorporated herein by reference.

**COUNT V**

**Intentional Infliction of Emotional Distress**

**- Detective John Doe 1 (Supervised thee arrest)**

79.        The preceding paragraphs 1 through 44 are incorporated herein by reference.

80.        Detective John Doe 1 acted intentionally by subjecting REEVES to a humiliating public arrest.

81.        The conduct was extreme and outrageous.

82.        This horrifying event caused REEVES to suffer emotional distress that was, is, severe and disabling.

**83.**        John Doe 1 acted with actual malice in the perpetration of the execution of the arrest by overseeing and supervising John Doe 2 and John Doe 3.

**COUNT VI**

**Failure to Train or Supervise – 42 U.S.C. § 1983**

**Negligent Failure to Train or Supervise**

**(CITY OF NEW YORK)**

84.        The preceding paragraphs 1 through 44 are incorporated herein by reference.

85.        The City of New York is liable pursuant to 42 U.S.C. § 1983 for the failure to train its officers not to engage in arrest on the basis of racial profiling.

86.        The need for training to eradicate racial profiling in arrest is not only generally known, it has been a subject in New York City for many years.

87.        The City of New York has failed to adopt policies requiring adoption of policy and training against race-based arrest by law enforcement officers) due to the prevalence of the practice. Race-based arrest are a known course of conduct by NYPD.

88.     Race based arrest is a serious problem in New York City and the city is doing little to address the problem.

89.     Race-based arrest are a known course of conduct by law enforcement having manifest potential for causing constitutional deprivations to persons on the basis of race, in this instance because REEVES is Black.

90.     The failure to train officers against race-based discrimination when conducting an arrest was so profound that, as part and parcel of the racial profiling arrest of REEVES, Officers did not merely subject REEVES to an arrest, but to an act of degradation and dehumanization that can nly occur if an officer holds a deep rooted racial bias against the people he is to serve, and believes that his conduct has at least the tacit approval of his employer, that approval conveyed in part by the failure to train.

91.     Likewise, DOE's failure to intervene reflects that racial profiling and extreme misconduct is not aberrational, but part of a culture and institution which tolerates such conduct. The failure to train officers against racial profiling by LPD and the City was a moving force behind the racial profiling, arrest and detention of REEVES.

92.  The need for training to prohibit the unlawful and flagrant arrest of black men is obvious, as the authority granted to police officers to search or arrest is subject to limitation without which constitutional violations are certain to occur. Furthermore, there have been many reports in news media of roadside or flagrant arrests of black men by law enforcement, reflecting use of this tactic in increasing volume nationally. This is also a topic of concern with the New York City Council.

According to NYCLU, Black people, Latin people made up 90 percent of those arrested in NYPD traffic stops. https://www.nyclu.org/en/news/black-latinx-people-were-90-percent-those-arrested-nypd-traffic-stops

The U.S. Department of Justice investigation revealed an issued within the NYPD Special Victim's unit.  The same unit that violated REEVES rights. https://theappeal.org/nypd-special-victims-division-doj-investigation/

Recently, NYC Councilman Yusef Salaam, a member of the exonerated group of men known as the Central Park Five, said he was stopped and pulled over by police without being given an explanation.  https://www.fox5ny.com/news/nyc-councilman-yusef-salaam-pulled-over-nypd

Due to unfair targeting of black men, rampantly and culturally accepted as the norm in the agency, a recent law now requires New York City police officers to record the apparent race, gender and ages of most people they stop for questioning under a law passed Tuesday by the City Council, which overrode a veto by Mayor Eric Adams. https://www.pbs.org/newshour/nation/nypd-officers-will-have-to-record-race-of-people-they-question-in-law-aimed-at-police-transparency

**93.**     The City and NYPD's failure to train constituted deliberate indifference and caused the constitutional violations and injuries complained of herein.

**COUNT IX**

**Respondeat Superior for**

**Common Law and State Constitutional Claims**

**(CITY OF NEW YORK, NYPD)**

94.     The preceding paragraphs 1 through 44 are incorporated herein by reference

95.     The DOES violated the rights guaranteed to REEVES under the common law and constitution of the State of New York.

96.    At all times relevant hereto, the DOES were officers of NYPD, itself a department of the city.

97.    The acts alleged in this Complaint were within the scope of their employment as police officers of the NYPD.

98.    NYPD and the City are liable to REEVES pursuant to Respondeat superior for the common law and state constitutional violations committed by the DOES.

99.    REEVES has suffered substantial losses.

100.    REEVES life, career, profession, business entity, and ability to make a living has been and will be disproportionally impacted as the collateral consequences of the arrest as is the life of many black man, with records tainted by bogus arrest, and this would not have happened if REEVES was not black. The defendants continues to possess REEVES cell phone and for no lawful reason. They do not have the legal right to confiscate, search, seized and continue to hold onto the phone even after the case had been dismissed, which had originally gave rise to the seizing of REEVES phone. REEVES purchased a new cell phone on March 16, 2024. He had been without his phone since the day of the unjust and unfair arrest. His business operation suffered a serious interference because he was not getting business calls, or able to run his business without the phone. All of this suffering could have been prevented if he was not black.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Michael Reeves prays for judgment as follows:

a)    An award of compensatory damages against The DOES, the City and NYPD in an amount to be determined at trial;

b)    An award of punitive damages against Defendants in an amount to be determined at trial;

c)    An award of Plaintiff's costs and reasonable attorneys' fees in this action pursuant to 42 U.S.C. §§ 1983, 1988 and NYCHRL.

d)  Appropriate injunctive relief, including the deletion of the arrest record, including

the implementation of training protocols to prevent and effectively discipline the

conduct complained of herein; and,

e)  An order granting such other relief as this Court deems just and proper.


## DEMAND FOR JURY TRIAL

Plaintiff requests trial by jury as to all issues in this case.

Date:   March 17, 2024

Respectfully Submitted

Michael Reeves
217 Boerum Street, 3B
Brooklyn. NY 11206

Tel 212-804-8432
marymary100023@gmail.com

# TORT CLAIM AGAINST NYPD

# NOTARIZED CLAIM AGAINST THE CITY OF NEW YORK POLICE DEPARTMENTFOR PERSONAL INJURY SUFFERED ON MARCH 12, 2024 BY Claimant-MICHAEL D. REEVES

I    , Michael Reeves, hereby certify under the penalty of perjury that the information contained in the attached claim for PERSONAL INJURY is TRUE and CORRECT.

MICHAEL REEVES                                              NOTARY

Sworn to before me this
15th day of March

ARSENIA C BRITO
Notary Public - State of New York
NO. 01BR4976358
Qualified in Queens County
My Commission Expires Jan 22, 2027

**MICHAEL REEVES 217 BOERUM STREET, 3B BROOKLYN, NY 11206**

*re. Claim for false arrest, excessive use of force, malicious prosecution and violation of civil rights*

Name of Claimant:   Michael Reeves
Date of Birth:          June 4, 1969
Date of Incidence:   March 12, 2024

To whom it may concern:

Please find attached, a tort claim against **The New York City POLICE DEPARTMENT**.
Mr. Reeves SUBMITS this claim for injuries he sustained when about three unidentified NYPD Detectives accosted him at his home on March 12, 2024. During this illegal arrest, several
unknown NYPD Officers began by violently kicking and banging on the front door of Mr. Reeves residence at or about 6 am. Officers shouted out his name to a level that perhaps all of the residents in the building witnessed the humiliating arrest. Officers threatened to break into the apartment if Reeves did not come outside. When Reeves exited, he was violently placed into handcuffs. Hands behind his back despite his pleas of pains and repeated notifications of previous injuries and request to be handcuffed in front.

The agents' use of force was wholly unnecessary and disproportionate as Mr. Reeves did not resist in any way when they arrested him. Despite there was insufficient probable cause to support a violent arrest, the officers slammed him into the wall, the men handcuffed him, and placed him under arrest. NYPD Officers knew or should have known that their evidence did not support a violent arrest. He was driven to the police station as neighbors and other onlookers stared in total shock. He spent hours in custody at the precinct located at 653 Grand Ave, Brooklyn NY. He was then moved to NYPD Central Booking located at 120 Schemerhorn Street, Brooklyn. Claimant was released from Central Booking at or about 1am the following day. Reeves was not fed breakfast, lunch or dinner as a diabetic male. At released, He was informed that the District Attorney decided not to prosecute because of inconsistencies (lies) in the alleged victim statement(s). Reeves contends that his arrest was conducted in violation of his civil rights. The actions were malicious and damaging. It was DISMISSED and not docketed. Claimant exemplary criminal record of over 34 years of abiding the law, is now unfairly tarnished with an unfair arrest record for a sex crime that never ever occurred. Claimant has now suffered irreparable harm due to the collateral consequences of being arrested for a sex crime. Despite, even cases that are later DISMISSED. The public perception is very unapologetic even when sex crime cases are DISMISSED. And, rightfully so.

Here, in an unrelated legal case, this Claimant is presently in the middle of a settlement mediation and/or jury trial, where his character could play a serious role. As such, this new sex crime arrest event record poses irreparable harm to him.

Enclosed please find a notice of claim for injuries filed by Mr. Reeves.

Yours,
Michael Reeves



New York City Comptroller
Brad Lander

Office of the New York City Comptroller
1 Centre Street
New York, NY  10007

Form Version:    NYC-COMPT-BLA-PI1-E

# Personal Injury Claim Form

Electronically filed claims must be filed within 90 days of the occurrence using the Office of the NYC Comptroller's website. If the claim is not resolved within one (1) year and 90 days of the occurrence, you must start a separate legal action in a court of law before the expiration of this time period to preserve your rights.

**I am filing:**  ◉ On behalf of myself.

◯ On behalf of someone else. If on someone else's behalf, please provide the following information.

| | |
|---|---|
| Last Name: | REEVES |
| First Name: | MICHAEL |
| Relationship to the claimant: | SELF |

**Claimant Information**

| | |
|---|---|
| *Last Name: | REEVES |
| *First Name: | MICHAEL |
| *Address: | 217 BOERUM STREET |
| Address 2: | |
| *City: | BROOKLYN |
| *State: | NEW YORK |
| *Zip Code: | 11206 |
| *Country: | USA |
| Date of Birth: | ██████ *Format: MM/DD/YYYY* |
| Soc. Sec. # | ██████ |
| HICN: (Medicare #) | |
| Date of Death: | *Format: MM/DD/YYYY* |
| Phone: | 212-804-84 |
| *Email Address: | marymary10023@gmail.com |
| *Retype Email Address: | marymary10023@gmail.com |
| Occupation: | self employed |
| City Employee? | ◯ Yes  ◉ No  ◯ NA |
| Gender | ◉ Male  ◯ Female  ◯ Other |

◯ Attorney is filing.

**Attorney Information (If claimant is represented by attorney)**

| | |
|---|---|
| +Firm or Last Name: | |
| +Firm or First Name: | |
| +Address: | |
| Address 2: | |
| +City: | |
| +State: | ▼ |
| +Zip Code: | |
| Tax ID: | |
| Phone #: | |
| +Email Address: | |
| +Retype Email Address: | |

**The time and place where the claim arose**

| | |
|---|---|
| *Date of Incident: | 03/12/2024 *Format: MM/DD/YYYY* |
| Time of Incident: | 06:00am *Format: HH:MM AM/PM* |
| *Location of Incident: | 217 Boerum Street,, Brooklyn NY 11206<br>120 Schemerhorn St, Brooklyn NY 11211<br>653 Grand St, Brooklyn NY 11201 |
| Address: | 217 Boerum Street, 3b |
| Address 2: | |
| City: | Brooklyn |
| *State: | NEW YORK |
| Borough: | BROOKLYN (KINGS) ▼ |

*** Denotes required fields.**
**+Denotes field that is required if attorney is filing.**
*A Claimant OR an Attorney Email Address is required.*

**RECEIPT FROM THE PURCHASE OF A NEW CELL PHONE**

PARKCHESTER STOP WIRELESS INC..
80 Hugh J Grant Circle
Bronx, NY-10472
USA
718-684-6444
License No.2049686-DCA

## Invoice

| Bill To | Ship To |
|---------|---------|
| (212) 804-8432 | |

| Date: 3/16/2024 | | Sales Person: | Net 30 days |
|---|---|---|---|

| Qty | Item ID | Description | Tax | Unit Price | TOTAL |
|-----|---------|-------------|-----|------------|-------|
| 1 | Moto G 5G | MT231▇▇▇▇ | ✓ | $189.99 | $189.99 |
| | IMEI | 86340106▇▇▇ | | | |
| | ICC ID | 890124▇▇▇▇▇ | | | |
| | UPC Code | 7539▇▇▇▇▇ | | | |
| | setup | Boost Ready (Setup Fee) **non-refundable** | ✓ | $35.00 | $35.00 |
| | noteligible | NOT Eligible for Promotional DISCOUNT | ✓ | $0.00 | $0.00 |
| | Discount | one time store discount | ✓ | ($101.00) | ($101.00) |

| Notes | | SubTotal | $123.99 |
|-------|---|---|---|
| This invoice was created using a Demo version of QuickInvoice. To remove this reminder, visit our Web site at www.quickinvoicesoftware.com to purchase the full version. | | | $0.00 |
| | | TAX | $11.00 |
| | | **TOTAL** | $134.99 |

NO REFUND! EXCHANGE POLICY: Customers can exchange Phone within 7 days of purchase with proper packaging and receipt. Only allow to exchange phone if it's DEFECTIVE.
Note, there will be re-stocking Fee to exchange.

***There will NO REFUND or EXCHANGE on Promotional phone.***
PHONE WARRANTY and INSURANCE POLICY: Store is not responsible for handling the matter related to phone warranty/insurance. Please call BOOST (1888 266 7848) for further assistance.



Insurance $8/month. Decide within 14 days form the purchase date!

**RECORD OF VISIT TO THE EMERGENCY  ROOM DUE TO BACK INJURY DERIVED FROM THE ILLEGAL AND HUMILIATING ARREST**

# AFTER VISIT SUMMARY

**Mount Sinai Beth Israel**

**Michael D. Reeves**   MRN: A4█████   📅 3/14/2024   📍 Mount Sinai Beth Israel Emergency Department 212-420-2840

## Instructions

As we discussed, you are being discharged from the Emergency Department because we feel it is safe for you to leave the hospital. Your condition may change. **If you develop any new or worsening symptoms, or the symptoms you still have persist for longer than we discussed, you should return to the Emergency Department immediately.** Just because we discharged you does not mean you should not come back if you are concerned. It is also important that you follow-up with your primary care doctor, or any specialty clinic appointments we have recommended or facilitated for you, as soon as possible.



**Your medications have changed**
➡ START taking:
**acetaminophen** (Tylenol)
**ibuprofen** (Advil,MOTRIN)
**lidocaine**

Review your updated medication list below.



**Read the attached information**
BACK PAIN (ACUTE OR CHRONIC) (ENGLISH)



**Pick up these medications at UNITED PHARMACY - Brooklyn, NY - 556 Grand St**
acetaminophen • ibuprofen • lidocaine

Address:  556 Grand St, Brooklyn NY 11211-4386
Phone:   718-384-7901



**AMB REF TO SPORTS FELLOWSHIP**
Where: 10 UNION SQ E PHYSIATRY
Address: 10 Union Square East Suite 5P NEW YORK NY 10003
Phone: 212-241-6321
Expires: 9/10/2024 (requested)



**Follow up with Mount Sinai Beth Israel Emergency Department**
Why: If symptoms worsen
Specialty: Emergency Medicine
Contact: 281 First Avenue
          New York New York 10003
          212-420-2840

## Today's Visit

You were seen by Erick Eiting, MD and Akini Moses, MD

**Reason for Visit**
Back Pain

**Diagnosis**
Acute left-sided low back pain with sciatica, sciatica laterality unspecified

☙ **Medications Given**
acetaminophen (TYLENOL) Last given at 10:39 PM

ibuprofen (Advil,MOTRIN) Last given at 10:39 PM

lidocaine Last given at 10:39 PM

## MyMountSinai Sign-Up

Send messages to your doctor, view your test results, renew your prescriptions, schedule appointments, and more.

Go to **https://mychart.mountsinai.org/mychart/,** click "Sign Up Now", and enter your personal activation code: **B5VT3-FW6BK-3BW8S**. Activation code expires 4/28/2024.

**EVIDENCE SHOWING THAT THE UNFAIR TARGETING OF BLACK MEN IS A WIDESPREAD CONCERN AND A SYSTEMATIC ISSUE, YET THE CITY OF NEW YORK CONTINUES TO PLAY A BLIND EYE BY FAILING TO TAKE AGGRESSIVE STEPS TO FIX THE PROBLEM**

# JUSTICE DEPARTMENT LAUNCHES INVESTIGATION INTO NYPD'S TROUBLED SPECIAL VICTIMS DIVISION

The probe will assess whether the SVD engages in a "pattern or practice of gender-biased policing," according to the DOJ.



John Angel/Unsplash

**Meg O'Connor**
Jun 30, 2022

The U.S. Department of Justice announced Thursday that it has opened an investigation into the New York City Police Department's sex crimes unit.

"Over the last several months, we have learned concerning information from a variety of sources of historical issues about the way the Special Victims Division has conducted its investigations for many years," said U.S. Attorney

Breon Peace for the Eastern District of New York in a <u>Justice Department statement announcing the probe</u>.

The investigation will assess whether the Special Victims Division (SVD) engages in a "pattern or practice of gender-biased policing," and the department will conduct a "comprehensive review of the policies, procedures and training for SVD investigations of sexual assault crimes," according to the statement. The areas it will probe include:

- How SVD interacts with survivors and witnesses, collects evidence, and completes investigations

- How SVD allocates staffing and resources

- Any steps the NYPD has taken to address deficiencies in its handling of sexual assault crimes

- The services and support offered to survivors of sexual assault.

The DOJ has informed New York Mayor Eric Adams and NYPD Commissioner Keechant Sewell of the probe.

Last year, sexual assault survivors <u>asked the DOJ</u> to investigate the NYPD's repeated mishandling of sex crime cases. The DOJ press release notes that the department received information "alleging deficiencies at SVD that have persisted for more than a decade."

"This investigation is happening because of the collective power of survivors," Alison Turkos told The Appeal. Turkos reported an assault to the NYPD in 2017 and her case was <u>badly botched</u>. "Survivors who joined together to build community and work toward true justice and accountability. I love and trust survivors, I just wish the city of New York felt the same."

As The Appeal <u>previously reported</u>, the NYPD's sex crimes division has been plagued by problems for years. In 2018, The Appeal documented instances in which special victims detectives <u>pressured rape victims into signing a form that closed their case against their will</u>. In 2019, data showed that the NYPD closed nearly 500 rape cases — <u>25 percent of all rapes reported that year</u> — due to an alleged lack of participation from rape victims. Then in 2020, the NYPD's Internal Affairs Bureau investigated several SVD sergeants and lieutenants over allegations that they had <u>stolen company time and drank on the job</u>.

And last year, five former high-ranking SVD officials told The Appeal that the NYPD has spent years <u>neglecting serious structural problems</u> that have long damaged sex crimes and child abuse investigations in New York City. In multiple cases, <u>women were assaulted</u> and <u>children were killed</u> after

In March 2018, New York City's Department of Investigation (DOI) released a report that found the division was understaffed and under-resourced for nine years, despite recommendations from an NYPD working group and warnings from the division's leadership. The report included internal NYPD documents obtained by the DOI that "acknowledge that many sexual assault cases are not properly investigated due to staffing and resource limitations."

The NYPD disputed the DOI report, calling it "an investigation in name only." The department ignored many of the DOI's recommendations. Then they removed the SVD commanding officer, Deputy Chief Michael Osgood, whose pleas to increase staffing at the division were ignored for years, even as caseloads skyrocketed.

In 2011, when Osgood said understaffing made it difficult for detectives to thoroughly investigate cases, a deputy commissioner responded that the SVD "did not have to investigate every misdemeanor [sex crime]." In 2017, there were 67 detectives assigned to investigate 5,661 adult sex crimes. For comparison, the city's homicide squads had 101 detectives assigned to investigate 282 homicides in 2017.

In November 2018, Osgood was reassigned to a patrol borough in Staten Island. One week later, he retired.

"Based on information provided to the Justice Department, we find significant justification to investigate whether the NYPD's Special Victims Division engages in a pattern or practice of gender-biased policing," said Assistant Attorney General for Civil Rights Kristen Clarke in the Justice Department's statement.

*This story is breaking and may be updated.*

# SUPPORT THE APPEAL

If you valued this article, please help us produce more journalism like this by making a contribution today.

| CRIMINALIZATION | POLICING | PROSECUTION | NEW YORK |
| --- | --- | --- | --- |

| NEW YORK POLICE DEPARTMENT | NYPD | SPECIAL VICTIMS DIVISION |
| --- | --- | --- |