UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

————————————————————————X

MICHAEL REEVES,

                Plaintiff,                    **MEMORANDUM & ORDER**

    -against-                       24-cv-2408 (NRM) (MMH)

CITY OF NEW YORK, *et al.*

                Defendants.

————————————————————————X

**NINA R. MORRISON**, United States District Judge:

Plaintiff Michael Reeves, proceeding *pro se*, brings this action under 42 U.S.C. § 1983 against the City of New York, the New York City Police Department (the "NYPD"), NYPD Detective Destiny Davila, and various other individual officers of the NYPD. Reeves alleges that Defendants violated his constitutional and statutory rights when NYPD officers arrested him, and Detective Davila seized and searched his cell phone. Defendants have moved to dismiss Reeves's complaint for failure to state a claim. For the reasons outlined below, Defendants' motion is granted in part and denied in part.

## FACTUAL BACKGROUND

The below facts are drawn from the complaint, Compl., ECF No. 1, and are assumed to be true for purposes of this motion to dismiss. *Sacerdote v. N.Y. Univ.*, 9 F.4th 95, 106–07 (2d Cir. 2021).

Plaintiff Michael Reeves is a Black man with diabetes. Compl. at 14–15, ¶¶ 20, 32.[1] Defendants were familiar with Reeves and his history prior to the arrest. *Id.* at 5. At 6:00 AM on March 12, 2024, three NYPD officers arrested Reeves at his home. Compl. at 14, ¶ 20. During his arrest, the officers "violently kick[ed] and bang[ed] on the front door" and "threatened to break into the apartment if Reeves did not come outside." *Id.* at 14, ¶ 28. When Reeves stepped out of his apartment, "the officers slammed him into the wall," and Reeves "was violently placed into handcuffs." *Id.* at 14, ¶¶ 28–29. During his arrest, Reeves complained of pain, notified the officers of previous injuries, and requested that his hands be cuffed in front of his body. *Id.* at 14, ¶ 28. The officers instead cuffed his hands behind his back. *Id.* Following his arrest, he was driven to the police station "as neighbors and other onlookers stared in total shock." *Id.* at 14, ¶ 29.

The police arrested Reeves in connection with a criminal complaint of attempted rape made in December 2023. *Id.* at 5, 7, 10. Reeves denies committing the crime alleged in the criminal complaint, *id.* at 6, and characterizes the criminal complainant as a "disgruntled employee/house clean[er]" that Reeves had fired for drug use on the job, *id.* at 9. Between the time the NYPD received the criminal complaint against him and when he was arrested, Reeves had five interactions with the police, some initiated by Reeves and some initiated by the police. *Id.* at 5. During these interactions, officers did not arrest Reeves. *Id.* at 5–6.

---

[1] The complaint contains information that is presented both in narrative form and in numbered paragraphs. Accordingly, the Court uses both the ECF pagination and, where appropriate, paragraph numbers when citing the complaint.

Following his arrest, Reeves was first held at a police precinct for several hours before being moved to NYPD Central Booking. *Id.* at 14, ¶ 30. Officers repeatedly searched his person, including by frisking "around his genitals and buttocks in public view," and seized his two cellphones. *Id.* at 7, 9. While in custody, Detective Davila informed Reeves that "she was charging him with attempted rape." *Id.* "After [Davila] had searched through Reeves for hours, . . . she then gave Reeves a form to sign" which purported to indicate that he consented to a search of his phone. *Id.* at 7 & 19, ¶ 72.

He was eventually released from Central Booking at approximately 1:00 AM the following day, after receiving only a few cups of water and no food while in custody. *Id.* at 7, 9 & 14–15, ¶ 30. Upon his release, Reeves was informed that "the District Attorney decided not to prosecute because of inconsistencies [] in the alleged victim['s] statement." *Id.* at 15, ¶ 30.

Reeves contends that the evidence gathered by the police "did not support" that he had committed a serious sexual offense, *id.* at 16, ¶ 47, that the police arrested him "[w]ithout conducting proper investigation with due diligence," *id.* at 16, ¶ 52, and that the police "had no articulable facts to support a reasonable suspicion" that Reeves had committed a crime, *id.* at 17, ¶ 53. Instead, Reeves asserts that he was arrested "because he is a [B]lack man." *Id.* at 16, ¶ 48. Reeves further contends that "policy inactions" on the part of the City of New York and the NYPD led to his arrest. *Id.* at 18, ¶ 65. Specifically, Reeves claims that "[t]he City of New York has failed to adopt policies . . . and training against race-based arrest by law enforcement officers"

and that "[r]ace-based arrest [is] a known course of conduct by [the] NYPD." *Id.* at 20, ¶ 87.

As a result of his arrest, Reeves suffered damages, "including economic and non-economic injuries." *Id.* at 17, ¶ 59. These include "financial losses," *id.* at 15, ¶ 35; "a physical injury," *id.* at 17, ¶ 60; "worsened" PTSD, including "extreme depression and phobia," *id.* at 17, ¶¶ 61–63, and negative impact on his "professional and business opportunities," *id.* at 15, ¶ 39.

## PROCEDURAL BACKGROUND

Reeves filed the instant suit in the U.S. District Court for the Southern District of New York on March 17, 2024. *See generally* Compl. The case was transferred to the Eastern District shortly thereafter, Transfer Order, ECF No. 4 (Mar. 22, 2025), and was directly assigned to the undersigned as a related case to *Reeves v. N.Y.C. Housing Auth.*, No. 23-CV-3646 (NRM) (MMH), Dkt. Order dated Apr. 1, 2024. U.S. Magistrate Judge Marcia M. Henry granted Reeves's motion to proceed *in forma pauperis* on June 28, 2024. Order, ECF No. 8. Pursuant to *Valentin v. Dinkins*, 121 F.3d 72 (2d Cir. 1997), Judge Henry also directed Defendant City of New York to attempt to ascertain the identities of the unidentified individuals named as John Does and Jane Does in the complaint. *Id.* The City initially identified Detective Davila on August 12, 2024. Ltr. at 2, ECF No. 15.[2] The City subsequently identified Detective Davila as the arresting officer and identified four other officers who were

---

[2] All page references are to ECF pagination unless otherwise noted.

involved in Reeves's arrest on September 11, 2024.  Status Report at 1–2, ECF No. 28.

Reeves raises multiple causes of action against Defendants, including (1) false arrest against all Defendants, Compl. at 16;[3] (2) excessive force against all Defendants, *id.*; (3) malicious prosecution against all Defendants, *id.*; (4) negligent infliction of emotional distress against all Defendants, *id.*; (5) Section 1983 illegal search and seizure against Detective Davila, *id.* at 18; (6) invasion of privacy and intrusion on seclusion against Detective Davila, *id.* at 19; (7) intentional infliction of emotional distress against Detective John Doe 1, who supervised Reeves's arrest, *id.* at 20; and (8) *respondeat superior* against the City of New York and the NYPD, *id.* at

---

[3] Reeves refers at various points in the complaint to the New York City Human Rights Law (the "NYCHRL"), which is codified at N.Y.C. Admin. Code § 8-101 *et seq*. *See, e.g.*, Compl. at 4 (alleging Reeves suffered a "human rights violation under the [NYCHRL]").  However, Reeves does not cite or describe with sufficient particularity any specific provision of the NYCHRL that might provide a cause of action for the claims he has alleged.  Moreover, the Court notes the NYCHRL appears to expressly exclude police officers acting in their official capacities from its coverage in situations such as this.  *See* N.Y.C. Admin. Code § 8-131 ("The provisions of this chapter which make acts of discriminatory harassment or violence as set forth in chapter 6 of this title subject to the jurisdiction of the commission shall not apply to acts committed by members of the police department in the course of performing their official duties as police officers whether the police officer is on or off duty.").  Accordingly, the Court disregards references to the NYCHRL in the complaint.  However, as discussed *infra*, Reeves's references to the NYCHRL and New York common law throughout the complaint do suggest that he is raising several substantive claims — *i.e.*, false arrest, excessive force, and malicious prosecution — under both federal and state law.  These claims, both state and federal, will be evaluated below.  *See Smulley v. Fed. Hous. Fin. Agency*, 754 F. App'x 18, 22 (2d Cir. 2018) ("Courts should interpret *pro se* complaints liberally to raise the strongest claims they suggest." (citing *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011))).

22. Reeves also advances (9) a *Monell* claim against the City of New York. *Id.* at 18, 20.

On August 23, 2024, Reeves filed what he styled as an "Emergency Motion for Temporary Restraining Order and Preliminary Injunction," ECF No. 26, which the Court denied by written Order on March 31, 2025, *Reeves v. City of New York*, No. 24-CV-2408 (NRM) (MMH), 2025 WL 974606 (E.D.N.Y. Mar. 31, 2025). Reeves also moved for leave to file an amended complaint, ECF No. 55 (Feb. 22, 2025), which the Court denied, *Reeves v. City of New York*, No. 24-CV-2408 (NRM) (MMH), 2025 WL 2778348 (E.D.N.Y. Sept. 26, 2025), *report and recommendation adopted*, Dkt. Order dated Sep. 30, 2025.[4]

Defendants filed the instant motion to dismiss on October 31, 2024. Mot. to Dismiss, ECF No. 39; Def. Mem. in Supp. of Mot. to Dismiss ("Def. Mem."), ECF No. 40. Reeves filed a response on December 30, 2024. Pl. Opp'n to Def. Mot. to Dismiss ("Pl. Opp'n"), ECF No. 47. Reeves also sought to stay this case, Mot. to Stay, ECF No. 53 (Feb. 21, 2025), which the Court denied, Dkt. Order dated Feb. 26, 2025.

---

[4] Reeves has filed to the docket many letters containing new allegations against both the Defendants here and other entities not named in this suit. Reeves sought to include at least some of these allegations in the proposed amended complaint. Because the Court has previously denied Reeves leave to amend his complaint to include these additional claims, the Court does not consider these letters or the claims raised through them in the course of its evaluation of Reeves's original, unamended complaint. *Cf. Ingber v. Truffleman*, No. 13-CV-1207 (JS) (WDW), 2013 WL 5728254, at *2 (E.D.N.Y. Oct. 22, 2013) ("Plaintiffs cannot amend their Complaint through claims raised solely in a brief.").

## LEGAL STANDARD

Where, as here, a defendant has moved to dismiss a complaint for failure to state a claim, courts must evaluate whether the complaint pleads "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). On the other hand, if "the allegations in a complaint, however true, could not raise a claim of entitlement to relief," the complaint must be dismissed. *Twombly*, 550 U.S. at 558. Courts at this stage "must construe [the complaint] liberally, accepting all factual allegations therein as true and drawing all reasonable inferences in the plaintiff['s] favor." *Sacerdote*, 9 F.4th at 106–07. However, courts need not accept legal conclusions and "threadbare recitals of a cause of action's elements." *Iqbal*, 556 U.S. at 663. Complaints that advance only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

These standards apply to *pro se* complaints, but "[a] document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citation modified) (citations omitted).

## DISCUSSION

As a preliminary matter, Reeves has named the NYPD as a Defendant in this action. Compl. at 1, 3. "[T]he NYPD is a non-suable agency of the City." *Jenkins v.*

*City of New York*, 478 F.3d 76, 93 n.19 (2d Cir. 2007); *see also* N.Y.C. Charter § 396

("All actions and proceedings for the recovery of penalties for the violation of any law

shall be brought in the name of the city of New York and not in that of any agency,

except where otherwise provided by law."). Accordingly, the NYPD is dismissed as a

Defendant in this proceeding. *See Malek v. N.Y. Unified Ct. Sys.*, No. 22-CV-5416

(HG) (RER), 2023 WL 2429528, at *16 (E.D.N.Y. Mar. 9, 2023) (dismissing the NYPD

as a defendant in a case alleging violations of Section 1983).

The Court now considers each of Reeves's claims in turn below.

## I.   False Arrest

Reeves's first claim is for false arrest under Section 1983 and New York law

against all Defendants.[5]   Compl. at 16.   "A § 1983 claim for false arrest is

substantially the same as a claim for false arrest under New York law." *Ackerson v.*

*City of White Plains*, 702 F.3d 15, 19 (2d Cir. 2012) (citation modified). "To plead false

---

[5] The Court notes at the outset of this analysis that there is some ambiguity as to whether the notice-of-claim requirements of New York law apply to Reeves's state law intentional tort claims — *i.e.*, false arrest, excessive force, malicious prosecution, and intentional infliction of emotional distress. *See Palmer v. City of New York*, 564 F. Supp. 3d 221, 240–42 (E.D.N.Y. 2021) (discussing this requirement in a factually similar context and noting divergent conclusion in this circuit); *Palmer v. City of New York*, No. 19-CV-5542 (RPK) (CLP), 2023 WL 3455058, at *2–4 (E.D.N.Y. May 15, 2023) (revisiting the question after supplemental briefing by the parties). Reeves attaches a notice of claim to his complaint, Compl. at 26–28, and appears to have comported with the requirement that such notice of claim be filed within 90 days of the alleged accrual of the claim, *see* N.Y. Gen. Mun. Law § 50-e. Defendants have not raised any arguments relating to whether the notice-of-claim requirements apply to Reeves's complaint, in part because Defendants appear to have interpreted Reeves's *pro se* complaint as not raising any state-law claims. *See generally* Def. Mem. (raising arguments only as to federal claims). The Court declines to the reach the issue, assuming without deciding that the notice-of-claim requirements present no bar to Reeves's state-law claims. This decision is without prejudice to Defendants' ability to raise such arguments at summary judgment.

arrest under New York law, a plaintiff must adequately allege that (i) 'the defendant intended to confine the plaintiff,' (ii) 'the plaintiff was conscious of the confinement,' (iii) 'the plaintiff did not consent to the confinement,' and (iv) 'the confinement was not otherwise privileged.'" *Palmer v. City of New York*, 564 F. Supp. 3d 221, 243–44 (E.D.N.Y. 2021) (quoting *Hernandez v. United States*, 939 F.3d 191, 199 (2d Cir. 2019), then citing *De Lourdes Torres v. Jones*, 47 N.E.3d 747, 760 (N.Y. 2016)).

"Probable cause is a complete defense to an action for false arrest brought under New York law or § 1983." *Ackerson*, 702 F.3d at 19 (citation modified). "An officer has probable cause to arrest when in possession of facts sufficient to warrant a prudent person to believe that the suspect had committed or was committing an offense." *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 128 (2d Cir. 1997). While "law enforcement officers are not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest" or "to continue investigating, sifting and weighing information once probable cause has been established," an arresting officer's "failure to make a further inquiry when a reasonable person would have done so may be evidence of a lack of probable cause." *Wagner v. Hyra*, 518 F. Supp. 3d 613, 626 (N.D.N.Y. 2021) (citation modified) (citations omitted).

Here, Defendants assert that Reeves "cannot maintain a claim for false arrest" because Reeves's "arrest was supported by probable cause." Def. Mem. at 10. Defendants rely on the criminal complaint made against Reeves to establish probable cause and argue that the Court may consider this document outside the pleadings at

9

the motion to dismiss stage because the criminal complaint is "incorporated by reference[] and central to the case." *Id.* at 8 n.1; *see also* Decl. of Joseph Zangilli dated Oct. 28, 2024, Ex. A ("Criminal Compl."), ECF No. 39-2. Defendants also contend that Reeves's complaint does not allege that "[t]he investigating officers had [any] reason to doubt the truth of the victim's statements" in the criminal complaint. Def. Mem. at 11.

For his part, Reeves argues that "[t]he NYPD failed to conduct a proper investigation," Pl. Opp'n at 5, that "there was no reason to believe that Reeves had committed a violent crime," *id.* at 4, and that "the NYPD knew or should have known that they lacked probable cause," *id.* at 5.

First, the Court does not consider the criminal complaint at this stage because it is not incorporated by reference or otherwise integral to Reeves's complaint. "Some courts have reasoned that it is proper to consider . . . police complaints in resolving 12(b)(6) motions for false arrest claims because these documents are integral to such claims," and "several courts have taken judicial notice of . . . police reports[] and similar materials on a motion to dismiss, not for the truth of their contents, but rather to establish their existence." *Alvarez v. Cnty. of Orange, N.Y.*, 95 F. Supp. 3d 385, 394–95, 397 (S.D.N.Y. 2015) (collecting cases). Other courts, however, decline either to consider criminal complaints as integral to false arrests claims or to take judicial notice of such documents. *Id.* at 395, 397 (collecting cases).

"[T]o be incorporated by reference, the complaint must make a clear, definite, and substantial reference to the document[,]" and even "[l]imited quotation of

documents not attached to the complaint does not constitute incorporation by reference." *Lewis v. Slaiby*, No. 23-CV-0231 (VAB), 2025 WL 821039, at \*16 n.4 (D. Conn. Mar. 14, 2025) (quoting *DeLuca v. AccessIT Grp., Inc.*, 695 F. Supp. 2d 54, 60 (S.D.N.Y. 2010)). Reeves makes at most passing reference to the criminal complaint in his pleading, and this is insufficient to incorporate by reference the criminal complaint. Moreover, there is no evidence that Reeves "relied on th[is] document[] in drafting the complaint." *Allyn v. Rockland Cnty.*, No. 12-CV-5022 (VB), 2013 WL 4038602, at \*4 (S.D.N.Y. July 30, 2013), *aff'd*, 646 F. App'x 60 (2d Cir. 2016). Reeves complaint does not indicate on its face that the criminal complaint was even in Reeves's possession when he drafted his complaint. Finally, Reeves has challenged the authenticity of the criminal complaint, Pl. Opp'n at 6, precluding its use at the motion to dismiss stage, *see Santiago v. City of Rome*, No. 24-CV-00704 (BKS) (MJK), 2025 WL 553347, at \*3 (N.D.N.Y. Feb. 19, 2025) ("The requirement that there be no dispute about the authenticity of documents integral to the complaint has been interpreted strictly: even implicit, conclusory, contradictory, or implausible objections to the authenticity or accuracy of a document render consideration impermissible." (citation modified)). Accordingly, the Court declines to consider the contents of the criminal complaint at this juncture. However, because Reeves himself acknowledges the existence of the criminal complaint while disputing its veracity, the Court takes limited judicial notice of the fact that the complaint was made.

Turning to the motion itself, Defendants predicate their argument against Reeves's false arrest claim solely on the criminal complaint, contending that "there

11

was probable cause to arrest [Reeves] based on the complaint made against him." Def. Mem. at 11.  However, "[a] report of a crime alone will not necessarily establish probable cause." *Singleton v. N.Y.C. Police Dep't*, No. 20-CV-9699 (LLS), 2021 WL 665032, at *6 (S.D.N.Y. Feb. 17, 2021) (quoting *Oliveira v. Mayer*, 23 F.3d 642, 647 (2d Cir. 1994)).  While "[t]he veracity of citizen complaints who are the victims of the very crime they report to the police is assumed," *Miloslavsky v. AES Eng'g Soc'y, Inc.*, 808 F. Supp. 351, 355 (S.D.N.Y. 1992), *aff'd*, 993 F.2d 1534 (2d Cir. 1993), law enforcement's receipt of this information does not necessarily establish probable cause where "the circumstances raise doubt as to the [reporting victim's] veracity," *Panetta v. Crowley*, 460 F.3d 388, 395 (2d Cir. 2006).

Reeves does more than challenge the veracity of the criminal complaint as a general matter; he cites specific facts that he asserts were or should have been known to law enforcement after conducting only minimal investigation, such as the fact that the "violent incident that allegedly took place on December 29th, 2023 . . . was not reported until February 24, 2024," Pl. Opp'n at 6, implying that the delay between the alleged crime and the report should have alerted the police to the unreliability of the criminal complaint.  In his complaint, Reeves also characterized the criminal complainant as having been made by a "disgruntled employee," Compl. at 9, and asserts that Defendants were familiar with Reeves and his background prior to the arrest, *id.* at 5.  Drawing all reasonable inferences in Reeves's favor, as the Court must at the motion to dismiss stage, Reeves has plausibly pleaded that Defendants were aware of the earlier conflicts between him and the criminal complainant, and

12

that this knowledge gave rise to a limited duty to investigate before making an arrest based on her bare allegations alone.  Where "a bitter prior relationship exists and is known to the arresting officer before the arrest is made, the complaint alone may not constitute probable cause; the officer may need to investigate further." *Sankar v. City of New York*, 867 F. Supp. 2d 297, 306 (E.D.N.Y. 2012) (citation modified).  Reeves has specifically pleaded that police failed to take any such further investigative steps. Compl. at 16, ¶ 52.

Reeves has pleaded sufficient facts, taken as true for purposes of this motion, to demonstrate that the officers lacked probable cause to arrest him.  *See Hyde v. Arresting Officer Caputo*, No. 98-CV-6722 (FB), 2001 WL 521699, at *2 (E.D.N.Y. May 11, 2001) ("[Plaintiff's] allegations contain a 'plausible interpretation' of events and thus 'a court *considering a motion to dismiss under Rule 12(b)(6)*' may not conclude that probable cause existed." (quoting *Posr v. Court Officer*, 180 F.3d 409, 415 (2d Cir. 1999))).  Accordingly, Defendants' motion to dismiss is denied as to Reeves's false arrest claims under federal and New York law.

## II.    Excessive Force

Reeves advances an excessive force claim under Section 1983 and state law against all Defendants.  Compl. at 16.  "The elements of an excessive force claim under Section 1983 are substantially the same as claims for excessive force [] under New York law." *Batson-Kirk v. City of New York*, No. 07-CV-1950 (KAM), 2009 WL 1505707, at *11 (E.D.N.Y. May 28, 2009).  "The Fourth Amendment prohibits the use of unreasonable and therefore excessive force by a police officer in the course of

13

effecting an arrest." *May v. Levy*, 659 F. Supp. 3d 323, 337 (E.D.N.Y. 2023) (adopting report and recommendation in part and modifying in part) (quoting *Tracy v. Freshwater*, 623 F.3d 90, 96 (2d Cir. 2010)). "Police officers' application of force is excessive, in violation of the Fourth Amendment, if it is objectively unreasonable in light of the facts and circumstances confronting them." *Id.* (quoting *Maxwell v. City of New York*, 380 F.3d 106, 108 (2d Cir. 2004)). In order to be liable for an excessive force claim, an officer must have been personally involved in the use of force. *See Spavone v. N.Y.S. Dep't of Corr. Servs.*, 719 F.3d 127, 135 (2d Cir. 2013) ("It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983."). "Personal involvement for the purposes of a § 1983 excessive force claim can be shown where a police officer directly participates in an assault, or was present during the assault with reasonable opportunity to intercede on plaintiff's behalf yet failed to do so." *Palm v. Brooks*, No. 22-CV-9729 (VB), 2024 WL 1908388, at *4 (S.D.N.Y. May 1, 2024).

Here, Reeves's excessive force claim appears to rely on (1) the fact that "the officers slammed him into the wall" prior to handcuffing him, Compl. at 14, ¶ 29, and (2) the way in which he was handcuffed during his arrest, *see id.* at 14, ¶ 28 (stating Reeves was "was violently placed into handcuffs" and handcuffed behind his back despite complaints of pain and requests that his hands be cuffed in front of him). The Court notes that, while Defendants have moved to dismiss the complaint in its

14

entirety, they have advanced no specific arguments as to why Reeves's excessive force claims have not been adequately pled.

As an initial matter, at the time Reeves filed his complaint, the identity of the officers who arrested him was unknown, and he accordingly named them pseudonymously in the complaint. The City of New York subsequently identified Detective Davila as the arresting officer and identified four other officers who were involved in Reeves's arrest. Status Report at 1–2, ECF No. 28. At the pleading stage, Reeves "need not establish who, among a group of officers, directly participated in the attack and who failed to intervene." *Jeffreys v. Rossi*, 275 F. Supp. 2d 463, 474 (S.D.N.Y. 2003), *aff'd*, 426 F.3d 549 (2d Cir. 2005). And Reeves has sufficiently pleaded the requisite personal involvement of the officers who allegedly conducted or failed to intervene in the alleged excessive force at the time of his arrest.

The Court now considers the sufficiency of Reeves's excessive force allegations, beginning with his claim that officers slammed him into the wall before handcuffing him. "[C]ourts have held that 'not every push or shove' in effectuating arrest constitutes excessive force." *Salazar v. City of New York*, No. 15-CV-1989 (KBF), 2016 WL 3748499, at *6 (S.D.N.Y. July 11, 2016) (quoting *Romano v. Howarth*, 998 F.2d 101, 105 (2d Cir. 1993)). However, "[t]he Second Circuit has emphasized that it is typically inappropriate to dispose of an excessive force claim at the motion-to-dismiss stage." *Ghani v. Town of W. Seneca*, No. 24-CV-568 (GWC), 2025 WL 2323381, at *8 (W.D.N.Y. Aug. 12, 2025) (citing *Oakley v. Dolan*, 980 F.3d 279, 284 (2d Cir. 2020)). Evaluating Reeves's claim "requires balancing the nature and quality of the intrusion

15

on the plaintiff's Fourth Amendment interests against the countervailing governmental interests at stake." *Tracy v. Freshwater*, 623 F.3d 90, 96 (2d Cir. 2010).

> When "conducting that balancing" in the context of police conduct with respect to a plaintiff, [courts] consider the following so-called *Graham* factors: "(1) the nature and severity of the crime leading to the arrest, (2) whether the suspect pose[d] an immediate threat to the safety of the officer or others, and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight." [Courts] are also to consider the so-called *Figueroa* factors: "[4] the need for the application of force, [5] the relationship between the need and the amount of force that was used, [6] the extent of the injury that was inflicted, and [7] whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm."

*Linton v. Zorn*, 135 F.4th 19, 31 (2d Cir. 2025) (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989); then quoting *Figueroa v. Mazza*, 825 F.3d 89, 105 (2d Cir. 2016)).

Applying these factors to Reeves's complaint, dismissal of the excessive force claim is not appropriate. First, while attempted rape (the crime of which Reeves was accused by the criminal complainant and which precipitated his arrest) is a serious offense, the alleged crime took place several months prior to the March 12, 2024 arrest. No crime was ongoing at the time of Reeves's arrest, and the arresting officers were not placed in danger at the time of the arrest by the fact that Reeves had allegedly committed a crime in December 2023. *See Cox v. Fischer*, 248 F. Supp. 3d 471, 480 (S.D.N.Y. 2017) (considering whether pre-arrest conduct was "dangerous [or] threatening" when evaluating the first *Graham* factor). This factor thus weighs against finding the arresting officer's use of force reasonable.

Second, based on the allegations in the complaint and drawing reasonable inferences in Reeves's favor, there is no indication that Reeves either posed an

16

immediate threat to the safety of the arresting officers or actively resisted or attempted to evade arrest. Reeves pleads that he did not resist arrest. Compl. at 14, ¶ 29. He also pleads that he exited his apartment at the direction of the officers, at which point they "slammed" him into a wall and handcuffed him. *Id.* at 14, ¶¶ 28–29. The facts as pleaded indicate that Reeves was compliant and nonviolent. Accordingly, the second and third *Graham* factors weigh against the reasonableness of the officer's use of force. Moreover, in light of these well-pleaded facts, there was no apparent need for this degree of force to effectuate Reeves's arrest. *See Ghani*, 2025 WL 2323381, at *9 (holding that there was "little to no need for force" when officers grabbed the plaintiff's arm, pinned her against a wall, took her to the ground, and forced her arms behind her back before the plaintiff began resisting once on the ground). Accordingly, the first and second *Figueroa* factors also weigh against the reasonableness of the officers' use of force.

Third, the Court must evaluate the extent of any injuries suffered by Reeves because of the alleged application of excessive force. Reeves pleads only that he "suffered a physical injury" but does not describe the injury or its cause in detail. Compl. at 17, ¶ 60. However, Reeves does attach to his complaint a medical record from an emergency room visit on March 14, 2024, shortly after his arrest, which he claims was "due to back injury derived from the illegal and humiliating arrest." Compl. at 31–32. Unlike the criminal complaint Defendants sought to have the Court consider as part of the motion to dismiss, the Court considers this medical record when analyzing the sufficiency of Reeves's factual allegations because Reeves has

17

attached it to his complaint as an exhibit. *See DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) ("In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider . . . documents attached to the complaint as exhibits . . . ."). This medical record indicates that Reeves was diagnosed with "[a]cute left-side low back pain with sciatica, sciatica laterality unspecified" and given acetaminophen, ibuprofen, and lidocaine. Compl. at 32; *see also Piper v. City of Elmira*, 12 F. Supp. 3d 577, 593 (W.D.N.Y. 2014) ("[A]lthough a showing of excessive force does not require proof of permanent injury, *de minimis* injuries may indicate that the amount of force was likewise *de minimis*." (citations omitted)); *cf. Ghani*, 2025 WL 2323381, at *10 (finding injuries, including a back injury, to be "rather serious" where the plaintiff specifically pleaded that the injuries were "caused" by force used during an arrest). In light of the latitude afforded to *pro se* litigants like Reeves, and drawing all reasonable inferences in his favor at the motion to dismiss stage, Reeves has alleged that he suffered injuries of some kind as a result of the force used upon his body at the time of his arrest and that those injuries led him to seek emergency medical treatment. Accordingly, and especially given that Reeves has pleaded facts indicating that he posed no immediate risk to the officers or anyone else at the time he was arrested, the third *Figueroa* factor weighs against the reasonableness of the officers' use of force.

Finally, the Court must evaluate whether the officers used force in good faith or were instead maliciously or sadistically seeking only to cause harm. Nothing alleged in the complaint would establish that the officers had the sole purpose to

18

harm Reeves.  "Thus, though it is possible the officers acted unconstitutionally, these circumstances do not suggest that the officers acted out of malice."  *Ghani*, 2025 WL 2323381, at \*10.  This factor is either neutral or in favor of Defendants.  However, the other factors heavily favor Reeves and thus preclude dismissal of the excessive force claim.

The Court next considers that aspect of Reeves's excessive force claim which challenges the manner in which he was handcuffed. Claims of excessive force predicated on tight handcuffing often present a high bar to plaintiffs.  *See Maila Beach v. City of New York*, No. 21-CV-06737 (ALC), 2023 WL 5576398, at \*4 (S.D.N.Y. Aug. 28, 2023) (asserting that "[t]here is consensus among courts in this circuit that tight handcuffing does not constitute excessive force unless it causes some injury beyond temporary discomfort" (quoting *Johnson v. City of New York*, No. 18-CV-5623 (ALC), 2020 WL 3100197, at \*3 (S.D.N.Y. June 11, 2020))).  However, "[o]n an excessive force claim involving handcuffing, 'a plaintiff asserting a claim for excessive force need not always establish that the plaintiff alerted an officer to the fact that the handcuffs were too tight or causing pain,' and the operative inquiry is 'whether an officer reasonably should have known during handcuffing that the officer's use of force was excessive.'"  *Baker v. City of New York*, 551 F. Supp. 3d 258, 266 (S.D.N.Y. 2021) (citation modified) (quoting *Cugini v. City of New York*, 941 F.3d 604, 613 (2d Cir. 2019)).  "A plaintiff satisfies this threshold if . . . the plaintiff signaled his distress 'verbally or otherwise, such that a reasonable officer would have been aware of the plaintiff's pain.'"  *Id.* (quoting *Cugini*, 941 F.3d at 613).

19

Here, the Complaint clearly alleges that the officers handcuffed Reeves behind his back "despite his pleas of pain[] and repeated notifications of previous injuries and request to be handcuffed in front." Compl. at 14, ¶ 28. In light of the foregoing analysis of the *Graham* and *Figueroa* factors as applied to Reeves's arrest, and the allegations that (1) Reeves complained of pain and specifically informed officers of preexisting injuries that were exacerbated by the way his arms were handcuffed behind his back and (2) the officers ignored these pleas, a reasonable jury could conclude that the officers' handcuffing of Reeves constituted excessive force. *See Baker*, 551 F. Supp. 3d at 266–67 (denying a defendant's motion for summary judgment on an excessive force claim where the plaintiff "told [officers] that she had an injured shoulder" and "complained that the handcuffs were too tight").

In conclusion, presuming the truth of all Reeves's well-pleaded assertions of fact, a reasonable jury could conclude that this was a circumstance where little to no force was warranted to effectuate Reeves's arrest and that the arresting officers used excessive force when they "slammed" him against a wall, as well as when they continued to cuff Reeves behind his back despite his complaints of pain and his alerting the officers that doing so exacerbated Reeves's previous injuries. Defendants' motion to dismiss the federal and state excessive force claims is denied.

### III.    Malicious Prosecution

Reeves raises a malicious prosecution claim under Section 1983 and New York law against all Defendants. Compl. at 16. "In order to prevail on a § 1983 claim against a state actor for malicious prosecution, a plaintiff must establish the elements

20

of a malicious prosecution claim under state law." *Alberty v. Hunter*, 144 F.4th 408, 417 (2d Cir. 2025) (citation modified) (quoting *Manganiello v. City of New York*, 612 F.3d 149, 160–61 (2d Cir. 2010)). "To establish a malicious prosecution claim under New York law, a plaintiff must prove (1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions." *Manganiello*, 612 F.3d at 161 (citation modified). "[A] Fourth Amendment claim under § 1983 for malicious prosecution does not require the plaintiff to show that the criminal prosecution ended with some affirmative indication of innocence.  A plaintiff need only show that the criminal prosecution ended without a conviction." *Thompson v. Clark*, 596 U.S. 36, 49 (2022).

Reeves's Section 1983 malicious prosecution claim fails at the first element. Nowhere in the complaint does Reeves plead that a criminal proceeding was initiated against him.  To the contrary, his complaint pleads that, upon his release from custody, he was told that "the District Attorney decided not to prosecute because of inconsistencies [] in the alleged victim['s] statement." Compl. at 15, ¶ 30.  Because there was no criminal prosecution of Reeves, his complaint fails to state a claim for malicious prosecution.  Accordingly, Defendants' motion with regard to this claim is granted.

## IV.   Negligent Infliction of Emotional Distress

Reeves advances a state common-law negligent infliction of emotional distress claim against all Defendants and groups this claim in his causes of action with his

claims for false arrest, excessive force, and malicious prosecution.  Compl. at 16–17.

Under New York law, "[t]o state a claim for negligent infliction of emotional distress,

a plaintiff must allege 'a breach of the duty of care resulting directly in emotional

harm when the mental injury is a direct, rather than a consequential, result of the

breach and when the claim possesses some guarantee of genuineness.'"[6]  *J.H. v.*

*Bratton*, 248 F. Supp. 3d 401, 416 (E.D.N.Y. 2017) (citation modified) (quoting

*Ornstein v. N.Y.C. Health & Hosps. Corp.*, 881 N.E.2d 1187, 1189 (N.Y. 2008)).

"Under this theory, the duty must be specific to the plaintiff, and not some

amorphous, free-floating duty to society." *Green v. City of Mount Vernon*, 96 F. Supp.

3d 263, 299 (S.D.N.Y. 2015) (citation modified).

Reeves has failed to state a claim for negligent infliction of emotional distress

because he has not alleged a duty owed specifically to him.  *See id.* (holding that, in a

case concerning allegations of unlawful search, false arrest, and excessive force,

"[p]laintiffs have alleged no such duty that the [d]efendant Police Officers specifically

owed them, and therefore they fail to state a claim under the direct duty theory").

---

[6] A plaintiff may also state a claim for negligent infliction of emotional distress under a bystander theory, where "a defendant's conduct is negligent as creating an unreasonable risk of bodily harm to a plaintiff and such conduct is a substantial factor in bringing about injuries to the plaintiff in consequence of shock or fright resulting from his or her contemporaneous observation of serious physical injury or death inflicted by the defendant's conduct on a member of the plaintiff's immediate family in his or her presence." *Baker v. Dorfman*, 239 F.3d 415, 421 (2d Cir. 2000) (quoting *Bovsun v. Sanperi*, 461 N.E.2d 843, 844 (N.Y. 1984)).  Plaintiff does not "allege that serious physical injury or death was inflicted by Defendant[s] on any member of [Reeves]'s immediate family in [his] presence," *Green*, 96 F. Supp. 3d at 299, and the Court does not consider this theory of liability.

Alternatively, Reeves's negligent infliction of emotion distress claim must be dismissed because it is based on intentional conduct, *i.e.*, Reeves's arrest and the alleged excessive force that accompanied it. *See Regeda v. City of New York*, No. 09-CV-5427 (KAM) (VVP), 2012 WL 7157703, at \*13 (E.D.N.Y. Sep. 7, 2012), *report and recommendation adopted*, 2013 WL 619567 (Feb. 19, 2013) ("[T]he negligent infliction of emotional distress claim should be dismissed because it is based on intentional conduct—the arrest of the plaintiff."). Accordingly, Defendants' motion to dismiss as to Reeves's negligent infliction of emotional distress claim is granted.

## V.     Section 1983 Illegal Search and Seizure

Reeves advances a Section 1983 and Fourth Amendment claim for illegal search and seizure of his cell phone following his arrest against Detective Davila. Compl. at 18–19, ¶¶ 70–77. "An allegation of illegal search and/or seizure is actionable under Section 1983." *RDK NY Inc. v. City of New York*, No. 21-CV-01529 (EK) (JAM), 2024 WL 4333704, at \*15 (E.D.N.Y. Sep. 28, 2024) (citing *Townes v. City of New York*, 176 F.3d 138 (2d Cir. 1999)). "Under *Riley v. California*, 'officers must generally secure a warrant before conducting' a search of 'data on cell phones.'" *Etere v. Nassau Cnty.*, No. 24-1755, 2025 WL 2814406, at \*4 (2d Cir. Oct. 3, 2025) (summary order) (first quoting 573 U.S. 373, 386 (2014) and then citing *United States v. Smith*, 967 F.3d 198, 208 (2d Cir. 2020)). However, "'[i]t is well settled that one of the specifically established exceptions' to the Fourth Amendment requirements that private property not be searched without a search warrant issued upon probable

23

cause 'is a search that is conducted pursuant to consent.'" *United States v. O'Brien*, 926 F.3d 57, 75 (2d Cir. 2019) (citation modified).

Here, Reeves appears to allege that Detective Davila did not have a warrant to search the content of his cell phone, Compl. at 19, ¶ 77, and Defendants do not dispute this, *see generally* Def. Mem. at 6–7. Instead, Defendants assert that the consent exception to the Fourth Amendment warrant requirement applies because Reeves signed a consent form.[7] *Id.* at 7. Reeves acknowledges in his complaint that he signed a consent form, Compl. at 7, but alleges that Detective Davila only presented him with the consent form *after* she had already searched the contents of his cell phone, *id.* at 11, ¶ 6 & 19, ¶ 72; Pl. Opp'n at 10 ("Detective Davilla [sic] had already browsed through the contents of his phone at least once before she offered [Reeves] the sheet to allow her to look through the phone, a few more times.").

Taking the well-pleaded facts in Reeves's complaint as true, he has sufficiently stated a Section 1983 illegal or unreasonable search and seizure claim. A consent form presented to a suspect and executed only after a search is conducted does not retroactively validate an unreasonable, warrantless search. *See United States v. Lawson*, 961 F. Supp. 2d 496, 505–06 (W.D.N.Y. 2013) ("The written consent which [the criminal defendant] subsequently executed is of no effect, since the search had already occurred." (citation omitted) (citing *United States v. Santa*, 236 F.3d 662, 678

---

[7] For the same reasons articulated *supra* with regard to the criminal complaint against Reeves, the Court does not find the consent form itself, which Defendants have attempted to put into the record, to be incorporated by reference or otherwise integral to the complaint and therefore does not consider it at the motion to dismiss stage.

(11th Cir. 2000))).  It is true that consent can be given verbally, not just in writing, *see United States v. Collins*, No. 19-CR-395 (PKC), 2020 WL 5439658, at *6 (S.D.N.Y. Sep. 9, 2020), *aff'd*, No. 21-1291, 2023 WL 309605 (2d Cir. Jan. 19, 2023), and the relevant inquiry in a case such as this is "whether the officer had a reasonable basis for believing that there had been consent to the search," *O'Brien*, 926 F.3d at 77. Whether Reeves signed a valid post-search consent form is one factor to consider in determining whether  he verbally or otherwise consented to the search before it occurred.  *See Unites States v. Garcia*, No. 09-CR-330 (DLI), 2011 WL 6010296, at *11 (E.D.N.Y. Nov. 30, 2011) ("The court must determine whether the waiver was voluntary based on the totality of the circumstances." (citing *United States v. Yu–Leung*, 51 F.3d 1116, 1119 (2d Cir. 1995))); *United States v. Gore*, No. 94-CR-282 (LMM), 1994 WL 698274, at *1 n.1 (S.D.N.Y. Dec. 13, 1994) ("Defendant having orally consented to the search, his execution of a consent form was actually not necessary, although he did so.").  But the complaint does not allege that Reeves verbally consented *ex ante* to a search of his cell phone.  The validity and timing of Reeves's purported consent to the search are fact questions that are inappropriate to resolve at the motion to dismiss stage, and, accordingly, Defendants' motion to dismiss this claim is denied.

## VI.    Invasion of Privacy and Intrusion on Seclusion

Reeves also raises what appear to be common-law invasion of privacy and intrusion on seclusion claims against Detective Davila, though Reeves does not plead any specific facts to support these claims.  Compl. at 19, ¶ 78.  However, New York

law recognizes neither of these common-law causes of action. *Cooper v. Mount Sinai Health Sys., Inc.*, 742 F. Supp. 3d 369, 379 n.8 (S.D.N.Y. 2024) ("New York law does not recognize a legal claim for invasion of privacy." (citing *Howell v. N.Y. Post Co., Inc.*, 612 N.E.2d 699, 703 (N.Y. 1993))); *Hamlett v. Santander Consumer USA Inc.*, 931 F. Supp. 2d 451, 458 (E.D.N.Y. 2013) ("New York has consistently refused to recognize a common law right of privacy, and hence there is no cause of action of intrusion upon seclusion under New York law."). Moreover, Section 50 of the New York Civil Rights Law, which codifies a statutory right to privacy, is inapplicable here, as it only prohibits the unauthorized use of a person's name, picture, likeness, or voice "for advertising purposes, or for the purposes of trade." N.Y. Civ. Rights Law § 50; *see also id.* § 51 (providing for actions for injunction and damages to remedy violations of Section 50). Finally, even if these causes of action existed under New York law, Reeves has not sufficiently pleaded them. *See Huan v. Fauci*, No. 22-CV-7392 (DG) (RML), 2024 WL 1181476, at *5 (E.D.N.Y. Feb. 12, 2024), *report and recommendation adopted*, 2024 WL 1174538 (Mar. 19, 2024) ("Merely invoking a cause of action, and even reciting its elements, is insufficient to state a claim absent actual factual support for each element."). Accordingly, Defendants' motion to dismiss these claims is granted.

## VII. Intentional Infliction of Emotional Distress

Reeves advances a state common-law intentional infliction of emotional distress claim against Detective John Doe 1, who Reeves alleges supervised his arrest. Compl. at 20, ¶¶ 79–83. The elements of an intentional infliction of emotional

distress claim under New York law are "(1) extreme and outrageous conduct, measured by the reasonable bounds of decency tolerated by society; (2) intent to cause or disregard or a substantial probability of causing severe emotional distress; (3) a causal connection between the conduct and the injury; and (4) severe emotional distress." *Sorrell v. Cnty. of Nassau*, 162 F. Supp. 3d 156, 172 (E.D.N.Y. 2016). "The conduct at issue must transcend the bounds of decency and be regarded as atrocious and utterly intolerable in a civilized community." *Id.*

Reeves alleges that John Doe 1 "acted intentionally by subjecting Reeves to a humiliating public arrest" and asserts that the "conduct was extreme and outrageous." Compl. at 20 ¶¶ 80–81. However, allegations of false arrest, without more, do not sufficiently plead the extreme and outrageous conduct required to state a claim for intentional infliction of emotional distress under New York law. *See Sorrell*, 162 F. Supp. 3d at 172 ("Plaintiffs, however, have not presented any argument that defendants' conduct [of alleged false arrest and malicious prosecution] rose to the level of outrageous character required to sustain [an intentional infliction of emotional distress] claim."); *cf. Mejia v. City of New York*, 119 F. Supp. 2d 232, 284–87 (E.D.N.Y. 2000) (denying summary judgment on an intentional infliction of emotional distress claim where (1) the court found evidence that the individual officer falsely arrested, used excessive force against, maliciously prosecuted, and conspired to fabricate evidence against the plaintiffs; and the individual officer's "course of conduct" included (2) stating that pregnant plaintiff's children would be taken away from her if she went to prison; (3) repeatedly using ethnic slurs against plaintiffs

27

during their arrest and interrogation; and (4) personally ordering pregnant plaintiff strip searched). "Moreover, New York courts, as well as federal courts applying New York law, have consistently held that where alleged conduct 'fits well within the traditional tort theories of false arrest and malicious prosecution,' a claim of intentional infliction of emotional distress is not available." *Weaver v. City of New York*, No. 13-CV-20 (CBA) (SMG), 2014 WL 950041, at *9 (E.D.N.Y. Mar. 11, 2014) (citation modified) (quoting *Yang Feng Zhao v. City of New York*, 656 F. Supp. 2d 375, 404–05 (S.D.N.Y.2009)).

Reeves's allegations against John Doe 1, which are limited to supervising what Reeves contends was a false arrest under state and federal law, are insufficient as a matter of law to state a claim for intentional infliction of emotional distress. Accordingly, Defendants' motion to dismiss this claim is granted.

## VIII. *Monell* Liability

Reeves invokes, as separate causes of action, both (1) the *Monell* doctrine of municipal liability under Section 1983, Compl. at 18, ¶¶ 65–69, and (2) failure to train or supervise under Section 1983, *id.* at 20–22, ¶¶84–93. However, failure to train or supervise is not a separate cause of action but rather one theory by which a plaintiff can establish a "custom or policy" for purposes of *Monell* liability. *See Cordero v. City of New York*, 282 F. Supp. 3d 549, 563 (E.D.N.Y. 2017) (discussing the custom or policy prong of the Second Circuit test for *Monell* liability). Accordingly, the Court construes Counts II and VI of the complaint as a single claim to extend liability for the alleged violations of Section 1983 against the City of New York under

28

the *Monell* doctrine.  *See Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006) ("*Monell* does not provide a separate cause of action for the failure by the government to train its employees; it extends liability to a municipal organization where that organization's failure to train, or the policies or customs that it has sanctioned, led to an independent constitutional violation.").

A municipality can be liable under Section 1983 if a plaintiff's rights are violated "by a governmental custom, policy, or usage of the municipality."  *Jones v. Town of E. Haven*, 691 F.3d 72, 80 (2d Cir. 2012) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978)).  A plaintiff must show (1) "a municipal policy or custom beyond a single bad act by an officer" and (2) "a causal connection between the custom or policy and the plaintiff's loss of liberty."  *Cordero*, 282 F. Supp. 3d at 563 (citing *K.D. ex rel. Duncan v. White Plains Sch. Dist.*, 921 F. Supp. 2d 197, 204 (S.D.N.Y. 2013) and *Vippolis v. Vill. of Haverstraw*, 768 F.2d 40, 44 (2d Cir. 1985)).  A "custom or policy" may be shown by "a failure by official policy-makers to properly train or supervise subordinates to such an extent that it amounts to deliberate indifference to the rights of those with whom municipal employees will come into contact."  *Id.*  "At the pleading stage, 'the mere assertion . . . that a municipality has such a custom or policy is insufficient in the absence of allegations of fact tending to support, at least circumstantially, such an inference.'"  *Gross v. Johnson*, No. CV 24-1722, 2025 WL 2722319, at *20 (E.D.N.Y. June 30, 2025) (quoting *Zahra v. Town of Southold*, 48 F.3d 674, 685 (2d Cir. 1995)); *see also Montero v. City of Yonkers, New York*, 890 F.3d 386, 403–04 (2d Cir. 2018) (dismissing *Monell* claim where plaintiff alleged that the

29

Yonkers Police Department had adopted an "unwritten policy" of retaliating against him but offered no facts to support that claim).

Here, Reeves asserts that the City of New York "is liable under Monell for the alleged policy inactions of the NYPD," Compl. at 18, ¶ 65, and is specifically liable "for the failure to train its officers not to engage in arrest on the basis of racial profiling," *id.* at 20, ¶ 85. Reeves also cites several news stories to support his assertions that "[r]ace-based arrest[s] are a known course of conduct by [the] NYPD." *See* Compl. at 20, ¶ 87 & 21–22, ¶ 92.

Reeves also cites recent remedial legislation passed by the New York City Council as support for his claim of a widespread pattern of racial disparities in NYPD arrest practices. He asserts that "[d]ue to unfair targeting of [B]lack men, rampantly and culturally accepted as the norm in the agency," the Council passed a law approximately two months prior to Reeves's arrest, which "requires [NYPD] officers to record the apparent race, gender, and ages of most people they stop for questioning," Compl. at 22, ¶ 92, and which Reeves appears to argue was an attempt to rectify the racial disparities in police-citizen street encounters that Reeves has asserted in his *Monell* claim.

This Court need not decide whether Reeves' allegations are sufficient to show the kind of widespread pattern and practice of unconstitutional racial profiling in street arrests, and/or a failure to train NYPD officers to prevent such unconstitutional disparities, as are required to state a claim under *Monell*. This is because Reeves has not pled facts showing that the second essential element of a

30

*Monell* claim — causation — is met. Although Reeves has alleged generally that, as a Black man, he is a member of the class subject to unconstitutional treatment by police in street encounters and arrests, he has not alleged any facts tending to show that this policy or practice caused the specific violations of Reeves's constitutional rights that are at issue in this lawsuit. Instead, he alleges that his wrongful arrest and resulting excessive force by police were not the result of a street encounter or racial profiling; according to Reeves, they occurred because Defendants improperly relied on a false report made by a known criminal complainant that they failed to duly investigate before accepting her dubious allegations as true and arresting Reeves. Accordingly, Defendants' motion to dismiss the Section 1983 claims as to the City of New York is granted.

## IX.   *Respondeat Superior*

Reeves asserts that "the City [is] liable . . . pursuant to [r]espondeat superior for the common law and state constitutional violations committed by the [Doe Defendant-officers]." Compl. at 23, ¶ 98. Under the doctrine of *respondeat superior*, "a master is vicariously liable for a tort committed by his servant while acting within the scope of his employment." *Gibbs v. City of New York*, 714 F. Supp. 2d 419, 421 (E.D.N.Y. 2010) (quoting *Riviello v. Waldron*, 391 N.E.2d 1278, 1280–81 (N.Y. 1979)); *see also id.* at 423 (holding that *respondeat superior* could create liability for the City of New York if a police detective were found to be liable for malicious prosecution); *Triolo v. Nassau Cnty.*, 24 F.4th 98, 110–11 (2d Cir. 2022) ("New York law is clear that municipalities can be liable for the actions of police officers on false arrest claims

31

under a theory of *respondeat superior*."); *Jones v. State*, 307 N.E.2d 236, 237–38 (N.Y. 1973) ("A long line of cases has held the State or municipalities liable for the actions of their police officers in the line of duty," including "[t]he use of excessive force by [State] troopers").

Like *Monell* liability, "respondeat superior is not a cause of action under New York law. Rather, it connects defendants to otherwise actionable torts." *King v. City of New York*, No. 16-CV-4299 (CBA) (PK), 2018 WL 4568798, at \*6 n.10 (E.D.N.Y. Sep. 24, 2018). Significantly, *respondeant superior* will not create municipal liability for violations of Section 1983, only for violations of state law. *See McAllister v. N.Y.C. Police Dep't*, 49 F. Supp. 2d 688, 697, 703 (S.D.N.Y. 1999) ("It is well established that a municipality may not be held liable under § 1983 for alleged unconstitutional actions by its employees below the policemaking level solely upon the basis of respondeat superior."); *Ackerson v. City of White Plains*, 702 F.3d 15, 22 (2d Cir. 2012), *as amended* (Dec. 4, 2012) ("Ackerson's *state* law false arrest claim creates liability for the City of White Plains, under a theory of *respondeat superior*." (emphasis added)). Finally, "because the determination of whether a particular act was within the scope of the servant's employment is so heavily dependent on factual considerations, the question is ordinarily one for the jury." *Doe v. Hilton Cent. Sch. Dist.*, 720 F. Supp. 3d 184, 192 (W.D.N.Y. 2024).

Here, because Reeves's state-law false arrest and excessive force claims against individual officers survive, his assertion of vicarious liability against the City

32

of New York under a state-law theory of *respondeat superior* also survives. Accordingly, Defendants' motion to dismiss this claim as to the City is denied.

## X.    Qualified Immunity

Finally, Defendants contend that Detective Davila's conduct as alleged in the complaint is shielded by the doctrine of qualified immunity.  Def. Mem. at 16–17. However, "[q]ualified immunity may only be granted at the motion to dismiss stage if 'the facts supporting the defense appear on the face of the complaint and it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief.'" *Belyea v. City of Glen Cove*, No. 20-CV-5675 (MKB), 2022 WL 3586559, at *20 (E.D.N.Y. Aug. 22, 2022) (quoting *McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004)); *see also Wandering Dago Inc. v. N.Y. State Off. of Gen. Servs.*, 992 F. Supp. 2d 102, 133 (N.D.N.Y. 2014) ("Since determining whether a defendant is entitled to qualified immunity is generally a fact intensive inquiry, the Second Circuit has made clear that it disfavors granting qualified immunity at the motion to dismiss stage.").  As discussed *supra*, the facts alleged in the complaint, if proven, could support a jury finding that Defendants falsely arrested Reeves, subjected him to excessive force, and unreasonably searched his cell phone without a warrant.  The complaint also does not plead facts on its face that would require a finding of either probable cause or arguable probable cause to arrest Reeves.

Moreover, there was "'no question' the rights to be free from arrest without probable cause and excessive force during an arrest [were] 'clearly established'" at the time of Reeves's arrest.  *Smith v. Arrowood*, No. 21-CV-6318 (EAW), 2022 WL

3927884, at *8 (W.D.N.Y. Aug. 31, 2022) (quoting *Lennon v. Miller*, 66 F.3d 416, 423 (2d Cir. 1995)). The same is true for the right to be free from warrantless, unreasonable searches of cell phones incident to arrest. *See generally Riley v. California*, 573 U.S. 373 (2014).

Accordingly, Defendants' motion to dismiss the claims against Detective Davila on the ground of qualified immunity is denied, without prejudice to Defendants to raise this defense in their answer or at summary judgment.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is granted in part and denied in part. Specifically, Defendants' motion is decided as to each claim as follows:

| | |
|---|---|
| State and Section 1983 false arrest | Defendants' motion is DENIED |
| State and Section 1983 excessive force | Defendants' motion is DENIED |
| State and Section 1983 malicious prosecution | Defendants' motion is GRANTED |
| Negligent infliction of emotional distress | Defendants' motion is GRANTED |
| Section 1983 illegal search and seizure | Defendants' motion is DENIED |
| Invasion of privacy and intrusion on seclusion | Defendants' motion is GRANTED |
| Intentional infliction of emotional distress | Defendants' motion is GRANTED |
| *Monell* liability for Section 1983 claims | Defendants' motion is GRANTED |
| *Respondeat superior* liability for state claims | Defendants' motion is DENIED |

Additionally, the NYPD is dismissed as a Defendant.


SO ORDERED.

        */s/ Nina R. Morrison*
        NINA R. MORRISON
        United States District Judge


Dated: February 5, 2026
     Brooklyn, New York